UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SEAN STEPHEN and DARYL STEPHEN                 :
                                               :
                      Plaintiffs,              :
                                               :
        -against-                              :        03-CV-6226 (KAM)
POLICE OFFICER JOHN HANLEY, Shield No.         :
13199, POLICE OFFICER EDGAR BOURDON,           :
Shield No. 30988, SERGEANT JUAN WHITE,         :
POLICE OFFICER MICHAEL ILIADIS,                :
POLICE OFFICER TERRANCE BRILL,                 :
POLICE OFFICER PATRICK COLEMAN,                :
POLICE OFFICER DEREK DUNSTON,                  :
POLICE OFFICER RICHARD MILLER, and             :
DETECTIVE JOSE HERNANDEZ,                       :
                                               :
                      Defendants.              :

-------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE*
TO EXCLUDE CERTAIN EVIDENCE AT TRIAL**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................... ii

BACKGROUND ............................................................................................1

    I.  The Incident ..........................................................................................1

    II. Alleged Criminal History, Conduct And Related Evidence ...........................4

LEGAL STANDARDS ....................................................................................6

ARGUMENT ................................................................................................8

    I.    The Evidence Concerning Prior Criminal Conviction Is Inadmissible
        Under Rules 402, 403, and 609........................................................8

        A.  Mr. Stephen's November 20, 2003 Conviction Is Irrelevant
            To This Case .......................................................................8

        B.  Admitting Evidence Of Mr. Stephen's November 20, 2003
            Conviction Would Created Grave Risks Of Unfair Prejudice
            And Juror Confusion...........................................................11

        C.  Mr. Stephen's November 20, 2003 Conviction Is Not
            Admissible As Impeachment Evidence Pursuant to Rule
            609(a) .............................................................................13

        D.  Mr. Stephen's November 20, 2003 Conviction Did Not
            Require Proof Or Admission Of An Act Of Dishonesty Or
            False Statement .................................................................17

    II.   Evidence Of Narcotics And Related Paraphernalia Allegedly
        Recovered From The Premises Should Be Excluded From Trial...............19

    III.  Evidence Of Unproven Charges Against Sean Stephen, Daryl
         Stephen And Chestimah O'Neil Should Be Excluded From Trial ...............21

CONCLUSION..............................................................................................24

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bensen v. American Ultramar Ltd.*,
    No. 92 Civ. 4420, 1996 WL 422262 (S.D.N.Y. July 29, 1996) ................................6, 11

*Daniels v. Loizzo*,
    986 F. Supp. 245 (S.D.N.Y. 1997) ........................................................................ passim

*Davenport v. DeRobertis*,
    No. 83 Civ. 4392, 1986 WL 4157 (N.D. Ill. March 31, 1986) ................................12, 13

*Goines v. Walker*,
    No. 97-CV-3512, 2000 WL 976657 (E.D.N.Y. July 12, 2000)....................................21

*Graham v. Connor*,
    490 U.S. 386 (1989)....................................................................................................9

*Gregory v. Oliver*,
    No. 00 C 5984, 2003 WL 1860270 (N.D. Ill. Apr. 9, 2003)..............................20, 21, 22

*Gwin v. Curry*,
    No. 95 C 1438, 1996 WL 99898 (N.D. Ill. Feb. 29, 1996)............................................12

*Jones v. City of New York*,
    No. 98 Civ. 6493, 2002 WL 207008 (S.D.N.Y. Feb. 11, 2002) ....................................17

*Kopf v. Skyrm*,
    993 F.2d 374 (4th Cir. 1993) ......................................................................................10

*Lewis v. Velez*,
    149 F.R.D. 474 (S.D.N.Y. 1993) ..........................................................................15, 18

*Moore v. City of Chicago*,
    No. 02 C 5130, 2008 WL 4549137 (N.D. Ill. Apr. 15, 2008).........................................22

*Outley v. City of New York*,
    837 F.2d 589 (2d Cir. 1988)........................................................................................6, 7

*People v. Cook*,
    37 N.Y.2d 591 (1975)....................................................................................................21

*People v. Sigl*,
    124 A.D.2d 1053 (4th Dep't 1986)...............................................................................21

## TABLE OF AUTHORITIES (CONTINUED)

Page(s)

<u>Cases</u>

*Peters v. MCI Telecomm. Corp.*,
   No. 87 Civ. 8335, 1989 WL 67220 (S.D.N.Y. June 14, 1989).........................................6

*Pinkney v. Thomas*,
   No. 1:07-CV-186, 2008 WL 4514830 (N.D. Ind. Oct. 7, 2008) ....................................20

*Sedney v. Blot*,
   No. 00 Civ. 1302, 2003 WL 22839801 (S.D.N.Y. Dec. 1, 2003)...................................11

*Stephen v. LeFevre*,
   467 F. Supp. 1026 (D.C.N.Y. 1979) ...........................................................................21

*Tennessee v. Garner*,
   471 U.S. 1 (1985)..........................................................................................................9

*Terry v. Ohio*,
   392 U.S. 1 (1968).........................................................................................................9

*Turner v. White*,
   443 F. Supp. 2d 288 (E.D.N.Y. 2005) ........................................................................14

*United States v. Basciano*,
   No. 05-CR-060, 2007 WL 3124622 (E.D.N.Y. 2007).....................................................11

*United States v. Figueroa*,
   618 F.2d 934 (2d Cir. 1980)........................................................................................11

*United States v. Fortes*,
   619 F.2d 108 (1st Cir. 1980).......................................................................................14

*United States v. Galati*,
   230 F.3d 254 (7th Cir. 2000) ...............................................................................14, 18

*United States v. Hawley*,
   554 F.2d 50 (2d Cir. 1977)..........................................................................................15

*United States v. Hayes*,
   553 F.2d 824 (2d Cir. 1977).................................................................................. passim

*United States v. Jackson*,
   627 F.2d 1198 (D.C. Cir. 1980) ..................................................................................17

## TABLE OF AUTHORITIES (CONTINUED)

Page(s)

**Cases**

*United States v. Krulewitch,*
    145 F.2d 76 (2d Cir. 1944)................................................................7, 11

*United States v. Millings,*
    535 F.2d 121 (D.C. Cir. 1976) ..............................................................18

*United States v. Ortiz,*
    553 F.2d 782 (2d Cir. 1977)............................................................14, 15

*United States v. Tillem,*
    906 F.2d 814 (2d Cir. 1990)................................................................14

*Williams v. McCarthy,*
    No. 05 Civ. 10230, 2007 WL 3125314 (S.D.N.Y. Oct 25, 2007) ................................22

*Wilson v. Union Pac. R.R. Co.,*
    56 F.3d 1226 (10th Cir. 1995) ..............................................................14

**Statutes**

Fed. R. Evid. 401 ..........................................................................1, 6, 9

Fed. R. Evid. 402 .......................................................................... passim

Fed. R. Evid. 403 .......................................................................... passim

Fed. R. Evid. 404 ......................................................................1, 7, 21, 22

Fed. R. Evid. 608 ....................................................................1, 7, 14, 21, 22

Fed. R. Evid. 609 .......................................................................... passim

N.Y. Penal Law § 220.16 .......................................................................4

**Other**

*4 Weinstein's Federal Evidence,*
    § 609.04[1]-[2][a], 609.20 ..................................................................14

*Christopher B. Mueller & Laird C. Kirkpatrick*,
　3 Federal Evidence § 6 (3d ed. 2008) ..................................................................7, 17, 19

*Conf.Rep.No. 93-1597*,
　93d Cong., 2d Sess. 9, reprinted in (1974) U.S. Code Cong. & Ad. News,
　pp. 7098, 7103..................................................................................................................18

v

Pursuant to Rules 401, 402, 403, 404, 608 and 609 of the Federal Rules of Evidence, Plaintiffs Sean and Daryl Stephen ( collectively "Plaintiffs" or "the Stephens") submit this memorandum in support of their motion to preclude Defendants from introducing any evidence concerning: (1) Sean Stephen's November 20, 2003 conviction for criminal possession of a controlled substance in the third degree; (2) the nature and quantity of narcotics and related paraphernalia recovered from 1316 Sterling Place, Apartment 2L, Brooklyn, New York ("1316 Sterling Place" or the "Premises") on July 10, 2002; and (3) the arrest history of Sean Stephen, Daryl Stephen and Chestimah O'Neil. As discussed below, this evidence is inadmissible under the Federal Rules of Evidence and controlling case law.

## BACKGROUND

I.   **The Incident**

In July of 2002, Sean Stephen and his fourteen-year-old son, Daryl Stephen, were visiting Sean Stephen's mother, Emelda, at her home at 1316 Sterling. (Ex. 1, Jan. 3, 2003 Deposition of Sean Stephens ("S. Stephen Dep.") at 56:9-57:18). In the pre-dawn hours of July 10, 2002, Mr. Stephen and Daryl were asleep, sharing a bed in a spare bedroom inside Emelda Stephen's three bedroom apartment. (*Id.* at 63:5-63:20; 64:6-13; 66:21-22). At approximately 4:30 a.m. that morning, Defendants, armed with, among other things, bunker shields, MP5 machine guns, and nine millimeter handguns, forcibly entered the apartment pursuant to a search warrant. (Fourth Amend. Compl. ¶ 21; Ex. 2, Warrant Execution Request Form, July 8, 2002, Bates 3).

Defendants obtained a search warrant for the Premises based on information allegedly received from a confidential informant who told Defendants that narcotics were

located inside the Premises.  (Ex. 3, Jan. 23, 2008 Deposition of Edgar Bourdon ("E. Bourdon Dep.") at 102:10-13; 107:12-24).  Prior to the execution of the search warrant, certain Defendants completed sections of a Warrant Execution Request Form, which indicated that Defendants expected to encounter "drugs" and "guns" as "special conditions" upon the execution of the warrant.  *See* Ex. 2, Warrant Execution Request Form, July 8, 2002, Bates 3; (Ex. 4, Jan. 29, 2008 Deposition of Jose Hernandez ("J. Hernandez Dep.") at 93:11-94:9; 95:20-96:5; 98:13-99:12).

By executing the search warrant at approximately 4:30am, Defendants violated the portion of the search warrant that provided that entry into the Premises was to be made between the hours of 6:00 a.m. and 9:00 p.m. only.  (Fourth Amend. Compl. ¶ 22). Upon Defendants' entry, Sean Stephen was awoken by hits from Defendants.  (Ex. 1, S. Stephen Dep. at 98:14-16; 133:13-17). A gun was pressed to the back of his head and he was told to "Freeze, motherfucker."  (*Id.* at 70:24-71:2). When Mr. Stephen asked to see a search warrant, he was told to "[s]hut the fuck up, Nigger" and was punched repeatedly with closed fists.  (*Id.* at 72:2-72:13; 96:4-13).  Mr. Stephen asked why he was being arrested and what the police were searching for and was again told to "[s]hut the fuck up, Nigger." (*Id.* at 96:19-21; Ex. 5, Oct. 17, 2006 Deposition of Daryl Stephen ("D. Stephen Dep.") at 94:17-95:1).

Mr. Stephen was continually punched and kicked as he was called a "nigger" by Defendants in front of his son Daryl. (Ex. 1, S. Stephen Dep. at 72:2-72:13; 83:12-14; 96:22-97:2; 158:8-17).  Mr. Stephen tried to cover up in a fetal position to avoid blows to the body and yelled out in pain as he asked Defendants to "please stop beating on [him]." (*Id.* at 97:19-98:1).  Mr. Stephen never resisted arrest, struck, attempted to strike, or

initiated any physical contact with Defendants. (*Id.* at 98:2-14; 104:10-17). Nevertheless, Mr. Stephen was beaten both by the police officers who first entered 1316 Sterling, and by officers who later entered the Premises after the initial beating concluded. (*Id.* at 80:9-12).

Eventually, Defendants removed Mr. Stephen from 1316 Sterling in handcuffs, continuing their group assault on him as they dragged him down the stairs of the Premises. (*Id.* at 74:9-13; Ex. 6, Mar. 31, 2008 Deposition of Chestimah O'Neil ("C. O'Neil Dep.") at 54:19-23).  And, as multiple third-party witnesses testified, the assault continued even after a handcuffed Mr. Stephen was placed in the backseat of a police cruiser.  Once inside the police vehicle, Mr. Stephen was repeatedly punched and struck with an object as he was driven to the police precinct. (Ex. 1, S. Stephen Dep. at 74:13-14; 97:12-14; 109:14-17) (Ex. 6, C. O'Neil Dep. at 28:9-29:24) (Ex. 7, April 2, 2008 Deposition of Muhammad Ali ("M. Ali Dep.") at 29:21-30:15).  After being transported to the police precinct, he was temporarily held in the police vehicle until he was better composed. (Ex. 1, S. Stephen Dep. at 111:7-19).  Once inside the precinct, Mr. Stephen was barely able to stand and had to be carried into his jail cell. (*Id.* at 112:11-13).  As a direct result of Defendants' assaults, Mr. Stephen sustained significant physical and emotional injuries. (*Id.* at 130:2-130:21; 23:6-20).

Shockingly, Daryl Stephen, a 14 year old child at the time, was also severely beaten by Defendants during their occupation of the Premises.  His face was pushed into a wall, he was thrown to the floor, kicked, handcuffed, had his face stepped on by Defendants, and ultimately, lost consciousness. (Fourth Amend. Compl. ¶ 38-42); (Ex. 5, D. Stephen Dep. at 92:1-5); (Ex. 1, S. Stephen Dep. at 101:10-20).  When Daryl's father

complained to Defendants that his son was bleeding from the head, he was told "to put a Bandaid on it." (Ex. 1, S. Stephen Dep. at 79:5-7). As a result of Defendants' vicious and unprovoked assault, Daryl was forced to undergo reconstructive surgery on his ear and now suffers from a debilitating case of chronic post-traumatic stress disorder. *See* Ex. 8, Expert Report of Dr. Eric Goldsmith at 8-9.

## II.   Alleged Criminal History, Conduct And Related Evidence

As a result of their search of the residence, Defendants allegedly recovered approximately 25 ounces of cocaine/crack cocaine in addition to a metal strainer with powder residue, sixty-six dollars and miscellaneous papers. (Ex. 9, Search Warrant Plan Post Execution Form, Bates 8).

Mr. Stephen ultimately pled guilty to criminal possession of a controlled substance in the third degree under New York State law on November 20, 2003 ("criminal possession conviction" or "criminal possession").[1] *See* Ex. 10, Letter from B. Birnbaum to D. McGill, June 30, 2008 (enclosing Sean Stephen Rap Sheet, Jan. 2, 2008). Mr. Stephen was paroled on November 2, 2005, and has resided at 1316 Sterling since that time. *See id.*

During Sean Stephen's January 3, 2007 deposition by Defendants, Mr. Stephen testified about the number of times he recalled being arrested and the circumstances regarding each arrest. (Ex., 1. Stephen Dep. at 44:4-51:2). Specifically, Mr. Stephen testified that he was arrested for: (1) "snatching a chain or something" when he was a teenager (*Id.* at 44:14-22); (2) a domestic dispute sometime "in the early 1990's" with Daryl Stephen's mother, that was later dismissed (*Id.* at 45:11-21); (3) domestic disputes

---

[1]      Under New York Penal Law § 220.16, A person may be guilty of criminal possession of a controlled substance in the third degree when he, *inter alia*, knowingly and unlawfully possesses a narcotic drug with intent to sell it. N.Y. Penal Law § 220.16 (1995).

regarding Mr. Stephen's refusal to give money to his then current wife, Solange Stephen, which were also later dismissed (*Id.* at 46:13-49:10); and participation in a protest during the 1980's. (*Id.* at 49:16-50:16). With respect to the July 10, 2002 incident, Mr. Stephen was also arrested for criminal possession of a controlled substance in the first and seventh degree, criminally using drug paraphernalia in the second degree, endangering the welfare of a child, and resisting arrest, but all of those charges were eventually dropped.

During Daryl Stephen's October 17, 2006 deposition by Defendants, he was also asked if he had ever been arrested. Daryl responded that he had received tickets and "two, maybe three" summonses. (Ex. 5, D. Stephen Dep. at 41:24-42:2). Daryl stated that he could not remember the circumstances surrounding the first summons he received, but recalled that the second and third summonses were for disorderly conduct as a result of blocking sidewalk traffic. (*Id.* at 42:17-43:23; 44:16-45:2; 45:21-45:24). Daryl stated that the summonses that he could recall had been dismissed. Daryl also stated that at some point in July 2005 and the fall of the same year, he was taken to the 67th precinct by the police for questioning in connection with an incident unrelated to this excessive force claim. (*Id.* at 52:4-16; 62:14-63:1). When Defendants asked Daryl what he discussed with the police officers, Daryl asserted the Fifth Amendment privilege. (*Id.* at 55:14-56:8). Although Defendants attempted to locate a criminal Rap Sheet for Daryl Stephen, they were unable to do so. *See* Ex. 10, Letter from B. Birnbaum to D. McGill, June 30, 2008 (enclosing letter from State of New York Division of Criminal Justice Services stating that no criminal record for Daryl Stephen can be provided).

Chestimah O'Neil is a third-party witness in this action. At Ms. O'Neil's deposition by Defendants on March 31, 2008, she testified that she witnessed the beating

suffered by Mr. Stephen as he was removed from 1316 Sterling in handcuffs and placed in a police vehicle.   (Ex. 6, C. O'Neil Dep. at 29:12-24; 54:14-55:3; 56:8-15).   Ms. O'Neil also testified that she had been arrested approximately ten times for fighting, although she stated she had never been convicted of a crime.   (*Id.* at 52:12-19; 71:20-23).

## **LEGAL STANDARDS**

The Federal Rules of Evidence ("Rules") govern the admissibility of evidence at trial.   It is clear under the Rules that evidence, to be admissible, must be relevant.   Rule 401 defines relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 402 provides that "[e]vidence which is not relevant is not admissible." FED. R. EVID. 402.

The fact that evidence may be deemed to be relevant does not *ipso facto* guarantee its admissibility, as Rule 403 provides that even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ...." FED. R. EVID. 403.   Hence, a District Court is tasked with the obligation to conduct a balancing test whenever presented with the issue of admissibility of evidence at trial, and is accorded broad discretion in making such determinations under Rule 403.   *See, e.g., Peters v. MCI Telecomm. Corp.*, No. 87 Civ. 8335, 1989 WL 67220, at *3 (S.D.N.Y. June 14, 1989) (citing *Outley v. City of New York*, 837 F.2d 589 (2d Cir. 1988)).   "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] ... that it will divert the jury from the facts which should control their verdict.'" *Bensen v. American Ultramar Ltd.*, No. 92 Civ. 4420, 1996 WL

422262, at *6 (S.D.N.Y. July 29, 1996) (citing *United States v. Krulewitch*, 145 F.2d 76, 80 (2d Cir. 1944)).

Rule 404(b) permits evidence of other crimes, wrongs or acts to be admitted for the limited purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." FED. R. EVID. 404(b). Rule 404(b) explicitly *excludes* the admission of such evidence, however, where its purpose is "to prove the character of a person in order to show action in conformity therewith." In addition, any evidence sought to be admitted under this provision is subject to the balancing test set forth in Rule 403. *See Outley*, 837 F.2d at 592.

In relevant part, Rule 608(b) states that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence." FED. R. EVID. 608(b). Specific instances may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness "(1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." *Id*.

Finally, Rule 609, as amended in 2006, regulates the use of prior convictions to impeach witnesses by suggesting untruthful character or disposition. Christopher B. Mueller & Laird C. Kirkpatrick, 3 *Federal Evidence* § 6:42 (3d ed. 2008) ("Mueller & Kirkpatrick"). Subsection (a) of Rule 609 provides that "evidence that a witness other than an accused has been convicted of a crime shall be admitted, *subject to Rule 403*, if

the crime was punishable by death or imprisonment in excess of one year under the law which the witness was convicted[,]" or "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." FED. R. EVID. 609(a)(1)-(2) (emphasis supplied).

Under Rule 609(b), evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction (whichever is the later date) unless the court determines that in the interest of justice, the probative value of the conviction substantially outweighs its prejudicial effect. FED. R. EVID. 609(b).

Rule 609(d) holds that evidence of juvenile adjudications is generally not admissible for impeachment purposes. FED. R. EVID. 609(d).

## ARGUMENT[2]

I.    **The Evidence Concerning Prior Criminal Conviction Is Inadmissible Under Rules 402, 403, and 609.**

The potential trial exhibits and testimony identified by Defendants in the Joint Pre-Trial Order include evidence concerning Mr. Stephen's November 20, 2003 conviction for criminal possession of a controlled substance in the third degree ("the November 20, 2003 conviction"). For the reasons set forth below, any evidence concerning this prior conviction should be excluded from trial.

A.    Mr. Stephen's November 20, 2003 Conviction Is Irrelevant To This Case.

The introduction at trial of evidence of Mr. Stephen's November 20, 2003 conviction for criminal possession of a controlled substance should not be admitted.

---

[2]    Plaintiffs made a series of proposals in an effort to avoid motion practice and reach an accommodation regarding the criminal history and narcotics evidence that forms the thrust of this motion. Defendants rejected each of Plaintiffs' proposals without bothering to make any counter-proposals.

Although Defendants allegedly recovered the controlled substance during their search of the Premises on July 10, 2002, evidence of the nature of the criminal possession charge and the ultimate disposition of that charge is clearly not relevant to the determination of whether Defendants used force that was objectively unreasonable and excessive under the circumstances.  Mr. Stephen's conviction does not tend to make the existence of any fact that is of consequence to the determination of that question more or less probable.  As such, its admission into evidence fails to satisfy the standard established by Rule 401, and must therefore be excluded pursuant to Rule 402.  *See* FED. R. EVID. 402 ("Evidence which is not relevant is not admissible.").

The standard for proving an allegation of excessive force by law enforcement officials against a free citizen during the course of an arrest was addressed by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386, 388 (1989).  In *Graham*, the Court found that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Id.* at 395 (emphasis in original).[3]  The proper application of the test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).  An examination of the factors articulated in *Graham* conclusively demonstrates that Mr. Stephen's conviction does not

---

[3]     A "seizure" triggering the Fourth Amendment's protections occurs when government actors restrain the liberty of a citizen by means of physical force or show of authority.  *Id.* at 395 n.10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

bear any relation to a determination of the force used by Defendants, or any other facts at issue in this case.

*First*, evidence of a conviction that occurred more than 16 months after the incident would not assist the jury in evaluating the "the severity of the crime at issue." Indeed, as the Fourth Circuit held in *Kopf v. Skyrm*, 993 F.2d 374 (4th Cir.1993), where probable cause to arrest an excessive force plaintiff exists, the actual guilt of the plaintiff is irrelevant to the amount of force that may be used to effect his arrest. *Id*. at 379-80. Like Mr. Stephen, the plaintiff in *Kopf* claimed that he was subjected to excessive force while he was being apprehended for a crime for which he later pled guilty. *Id*. In finding the plaintiff's ultimate conviction irrelevant, the court stated:

> If probable cause to arrest is present, the actual guilt or innocence of the arrestee is irrelevant to the amount of force that may be used. Just as the officers' actions ought not be faulted through "the 20/20 vision of hindsight," so also should they not be absolved by it.

*Id*. (footnote omitted).

Additionally, Mr. Stephen's criminal possession conviction does not provide any insight into whether the Stephens posed an immediate threat to the safety of Defendants, or whether either plaintiff resisted arrest or attempted to evade arrest by flight. Mr. Stephen's conviction carries no element of resisting or evading arrest, and indeed, neither Plaintiff was ever prosecuted for those charges. Hence, Mr. Stephen's criminal conviction more than 16 months *after* the incident at issue is irrelevant to the question of whether the officers' actions were objectively reasonable in light of the facts and circumstances confronting them *before* and *during* the course of the incident at issue. The reality is that a prolonged group assault on a subdued and handcuffed suspect could

never be justified, and certainly not by a conviction that occurred more than 16 months after the Defendants administered force against Mr. Stephen.

Accordingly, because evidence of Mr. Stephen's November 20, 2003 conviction for criminal possession of a controlled substance is irrelevant to the question of whether Defendants used excessive force against Mr. Stephen, it must be excluded under Rule 402.

B.   Admitting Evidence Of Mr. Stephen's November 20, 2003 Conviction Would Create Grave Risks Of Unfair Prejudice And Juror Confusion.

The Second Circuit has held that "[i]n making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] … that it will divert the jury from the facts which should control their verdict.'" *Bensen*, 1996 WL 422262, at *6 (quoting *Krulewitch*, 145 F.2d at 80).

The introduction of Mr. Stephen's November 20, 2003 conviction will unfairly prejudice the Stephens in this action and cause the jury to focus on facts that bear no relevance to the elements of Plaintiffs' excessive force claim. *See Daniels v. Loizzo*, 986 F. Supp. 245, 251 (S.D.N.Y. 1997) (revealing the details of plaintiff's drug conviction would create a risk of unfair prejudice in the minds of the jurors);[4] *see also Sedney v. Blot*, No. 00 Civ. 1302, 2003 WL 22839801, at *1 (S.D.N.Y. Dec. 1, 2003) (excluding prior convictions where admission would create a high risk of prejudice). Even if Mr.

---

[4]      The court in *Daniels* sought to mitigate the prejudice that would be suffered by the plaintiff in that case by limiting defendants' use of the conviction to the fact and date of the conviction. *Id.* at 251. Such a limiting instruction would not be sufficient here, however, as the admission of Mr. Stephen's conviction would only create a serious risk of unfair prejudice without being at all probative of Defendants' conduct in this case. Moreover, it is doubtful that any such limiting instruction could cure the prejudice likely to be suffered by Daryl Stephen, who was a minor at the time of the July 10, 2002 incident. Indeed, there is a substantial danger that the jury would lump the acts of the father together with the son and improperly punish both for actions that have little or no relevance to any issue of consequence in this case. *See, e.g.*, *United States v. Figueroa*, 618 F.2d 934, 947 (2d. Cir. 1980); *U.S. v. Basciano*, No. 05-CR-060, 2007 WL 3124622, at *5 (E.D.N.Y. 2007).

Stephen's November 20, 2003 conviction somehow held some slight probative value in relation to the question of whether Defendants exercised excessive force against the Stephens, that miniscule probative value would be so far outweighed by the dangers of unfair prejudice to Mr. Stephen that it would have to be excluded pursuant to Rule 403.

In addition to the obvious prejudice that would flow from Defendants attempting to portray Mr. Stephen as a criminal, there is very high risk that Defendants' introduction of Mr. Stephen's conviction would confuse the jury and potentially mislead them into viewing Mr. Stephen's conviction for the underlying crime as somehow absolving Defendants of their misconduct on the day in question. The admission of such evidence may even cause some jurors to improperly conclude that the Stephens deserved to be beaten due to Mr. Stephen's criminal activity. *See Davenport v. DeRobertis*, No. 83 C 4392, 1986 WL 4157, *3 (N.D. Ill. March 31, 1986)*; Gwin v. Curry*, No. 95 C 1438, 1996 WL 99898 at *1 (N.D. Ill. Feb. 29, 1996) (noting that "evidence as to a litigant's use of drugs has an obvious potential for being extraordinarily prejudicial . . deflecting the fact-finders' attention from the matters that are really at issue in the case to everyone's universally-shared concerns as to the problems that drug usage is creating for our society").

Ultimately, while the Stephens are confident that they will prove Defendants viciously assaulted the Stephens without provocation during the incident at issue, it is unrealistic to think that the jury will be able to divorce Mr. Stephen's criminal conviction from any consideration of monetary damages that would be addressed thereafter. *See Daniels*, 986 F. Supp. at 251 (observing that admission of a prior conviction for impeachment purposes in a civil rights case is "likely to cause prejudice to plaintiffs since

jurors might be unwilling to award damages once they have focused on the specific serious crimes which resulted in [their] incarceration."); *Davenport*, 1986 WL 4157, *3 (admission of prior convictions for purposes of impeachment in a civil rights case is "very likely to cause prejudice to plaintiffs since jurors might be unwilling to award damages once they have focused on the specific serious crimes which resulted in [their] incarceration."). Because evidence of Mr. Stephen's November 20, 2003 conviction for criminal possession of a controlled substance carries no probative value for the questions to be determined at trial, and because its admission would unfairly prejudice the Stephens and confuse the jury, it must be excluded pursuant to Rule 403.

      C.    Mr. Stephen's November 20, 2003 Conviction Is Not Admissible As Impeachment Evidence Pursuant to Rule 609(a).

For many of the same reasons articulated in the above Rule 403 analysis, Defendants should not be permitted to use evidence of Mr. Stephen's November 20, 2003 conviction for impeachment purposes under Rule 609(a)(1). Indeed, although Rule 609(a)(1) permits the impeachment of a witness with convictions punishable by death or imprisonment in excess of one year, the use of conviction evidence is explicitly made subject to the balancing test of Rule 403. *See* FED. R. EVID. 609 (a)(1). And while Plaintiffs do not dispute that Mr. Stephen's conviction for criminal possession was punishable by imprisonment for more than one year at the time that he pled guilty in 2003, because the prejudicial effect of Mr. Stephen's November 20, 2003 conviction, which remains the subject of an appeal, far outweighs any slight probative value, it should be excluded from trial.

In balancing the probative value against the prejudicial effect under Rule 609(a)(1), courts examine: "(1) the impeachment value of the prior crime, (2) the

remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Turner v. White*, 443 F. Supp. 2d 288, 299 (E.D.N.Y. 2005); *Daniels*, 986 F. Supp. at 250 (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir.1977)); *see also* 4 Weinstein's Federal Evidence, § 609.04[1]-[2][a], 609.20. Applying these factors to Mr. Stephen's November 20, 2003 conviction, it is clear that any evidence concerning the conviction should be excluded.

*First,* the impeachment value of Mr. Stephen's November 20, 2003 conviction is limited. Indeed, it is well-established that a drug conviction says little, if anything, about a witness's character for truthfulness. *See United States v. Fortes*, 619 F.2d 108, 118 (1st Cir. 1980) (affirming finding that cocaine sales were not probative of truthfulness); *United States v. Galati*, 230 F.3d 254, 262 (7th Cir. 2000) (conviction for drug possession has little probative value); *Wilson v. Union Pac. R.R. Co.*, 56 F.3d 1226, 1231 (10th Cir. 1995) (drug conviction not permitted under Rule 609(a)(1) because not relevant to veracity and highly prejudicial). Despite a divided panel's statements regarding the drug trafficker's "dissembling" nature in *United States v. Ortiz*, 553 F.2d 782 (2d Cir 1977),[5] the Second Circuit has indicated that even a crime as inherently secretive as smuggling is not meaningfully probative as to truthfulness. *See United States v. Tillem*, 906 F.2d 814, 827 (2d Cir. 1990) (608(b) case; superseded by regulation on other grounds); *see also Hayes*, 553 F.2d at 828 (noting that "mere narcotics possession" ranked relatively low on

---

[5]    In *Ortiz*, the Second Circuit allowed the admission of a defendant's prior conviction for heroin sales entered upon a plea of guilty, but in so doing, the Court focused on the fact that the government's only eyewitness was cross-examined extensively on his criminal history, and it would have been unfair to allow the defendant to appear "pristine" in contrast. *Ortiz*, 553 F.2d at 785. Thus, the Court's reasoning in *Ortiz* is easily distinguished from this case, as none of the witnesses identified by Defendants have a criminal history.

the scale of veracity-related crimes as compared to drug crimes involving an element of smuggling); *see also Lewis v. Velez*, 149 F.R.D. 474, 482 (S.D.N.Y. 1993) (finding prior conviction for possession of a controlled substance contains little probative value). Here, there is no indication that the circumstances surrounding Mr. Stephen's November 20, 2003 conviction involved the kind of sophisticated narcotics trafficking operation typically found to be probative of a witness's veracity. Indeed, Defendants cannot seriously suggest that Mr. Stephen led a life of "secrecy and dissembling in the course of that activity, being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *Ortiz*, 553 F.2d at 784. Armed with nothing but the bare records of the conviction, this Court could not "rationally conclude such activity in a witness's past is probative on the issue of credibility." *Id; see Hayes,* 553 F. 2d at 827 (a narcotics conviction is "one as to which the Government must present specific facts relating to dishonesty or false statement.").

*Second,* even if the November 20, 2003 conviction were not *per se* irrelevant, the determination of probative value must take into account the date of the conviction. *See United States v. Hawley*, 554 F.2d 50, 53 n.5 (2d Cir. 1977) (observing that the trial court should consider the "time of the conviction" in weighing probative value). Whatever marginal bearing a narcotics conviction may have on a witness's credibility decreases with the crime's remoteness in time. Thus, the fact that Mr. Stephen's November 20, 2003 conviction is more than 5 years old and stems from events that transpired more than 6 years ago cuts decidedly against its admissibility.

*Third,* for obvious reasons, the "similarity between the past crime and the conduct at issue" also weighs strongly in favor of excluding evidence concerning the November

15

20, 2003 conviction.  Mr. Stephen's November 20, 2003 conviction arises from the very same events that form the basis for this lawsuit.  If Defendants are permitted to introduce evidence concerning Mr. Stephen's conviction for criminal possession of a controlled substance, the jury may erroneously and improperly assume that the court that convicted Mr. Stephen had an opportunity to consider Defendants' actions on July 10, 2002 and found them to be justified.  At a minimum, the jury's focus will be diverted away from the conduct of Defendants, which is the only thing at issue for purposes of this trial, and to Mr. Stephen's alleged criminal conduct.  Because the events that form the basis of this lawsuit are identical to those that led to Mr. Stephen's November 20, 2003 conviction, this factor also favors exclusion.

*Finally*, the fourth and final factor to be considered by courts while balancing the probative value against the prejudicial effect under Rule 609(a) is the importance of the credibility of the witness.  Even if this factor weighs in favor of admitting Mr. Stephen's November 20, 2003 conviction, it does so only slightly.   Here, the jury will not be forced to rely solely on the testimony of Sean Stephen as to the factual events of July 10, 2002.  Rather, Plaintiff Daryl Stephen, three third-party witnesses, Muhammad Ali, Chestimah O'Neil, and Martha Stephen, and numerous records and photographs corroborate Mr. Stephen's version of events.  Moreover, because all of the Defendants have claimed a lack of recollection with respect to much of what transpired on July 10, 2002, Defendants cannot offer testimony that directly refutes Mr. Stephen's version of events.  Thus, this case is distinguishable from the circumstances in cases where courts have found this factor to cut more strongly in favor of admissibility.  *See, e.g.*, *Daniels*, 986 F. Supp. at 250-51 (finding the importance of the credibility of the witness factor to weigh in favor

16

of introducing a conviction specifically because the plaintiff and officer defendants would testify to "radically divergent versions" of the events that transpired); *Jones v. City of New York*, No. 98 CIV 6493(LBS), 2002 WL 207008 (S.D.N.Y. Feb. 11, 2002) (finding prior convictions weighed in favor of admissibility, but only because plaintiff was said to be "the only witness for the Plaintiff, there [was] no significant documentary evidence, and Defendants den[ied] the alleged incidents occurred, [and thus,] his success at trial probably hinge[d] entirely on his credibility with the jury."). Moreover, some federal courts have found that the importance of testimony is a factor that weighs *against* admissibility of a prior conviction. *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) (finding importance of testimony is a factor that weighs *against* admissibility of prior conviction). Thus, if this factor provides any support for admissibility, that support is modest, at best.

Because three out of the four factors used by courts to balance the probative value against the prejudicial effect of prior convictions under Rule 609(a) weigh decisively in favor of excluding any evidence concerning Mr. Stephen's November 20, 2003 conviction, it should be excluded from trial.

> D.  Mr. Stephen's November 20, 2003 Conviction Did Not Require Proof Or Admission Of An Act Of Dishonesty Or False Statement.

As an general matter, narcotics convictions are not admissible under Rule 609(a)(2). *See* Mueller & Kirkpatrick § 6:46 ("[I]t is clear that some crimes do not fit [within] Fed. R. Evid. 609(a)(2). These include...drug offenses...[among other] crimes."); *Hayes*, 553 F.2d at 827 (barring admission of narcotics importation conviction under Rule 609(a)(2) because government failed to present specific facts that crime involved dishonesty or false statement); *Daniels*, 986 F. Supp. at 249 (S.D.N.Y. 1997)

(barring admission of drug conspiracy conviction under Rule 609(a)(2) because defendants offered no evidence suggesting conviction involved dishonesty or false statement). *Lewis*, 149 F.R.D. at 481 ("Neither drug crimes nor assault involve dishonesty or false statement...so the plaintiff's convictions for these crimes are not automatically admissible under Rule 609(a)(2).") (citations omitted); *United States v. Millings*, 535 F.2d 121,123 (D.C. Cir. 1976) ("We are not persuaded by the government's argument that the offenses of … possessing narcotics involve 'some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.'"); *United States v. Galati*, 230 F.3d 254, 262 n.5 (7th Cir. 2000) (rejecting admission of witness' prior drug conviction under Rule 609(a)(2) and finding "[a] person's past drug possession does not necessarily implicate dishonesty….").

Historically, Congress has "define[d] narrowly the words 'dishonesty or false statement,' which, taken at their broadest, [would] involve activities that are part of nearly all crimes." *Hayes*, 553 F.2d at 827. Congress emphasized that Rule 609(a)(2) "was meant to refer to convictions 'peculiarly probative of credibility,' such as those 'for perjury or subordination of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi … the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.'" *Id*. at 827 (citing Conf.Rep.No. 93-1597, 93d Cong., 2d Sess. at 9, reprinted in (1974) U.S. Code Cong. & Ad. News, pp. 7098, 7103).

The 2006 amendment to Rule 609(a)(2) changed the language of that subdivision from "evidence that any witness has been convicted of a crime shall be admitted, if it involved dishonesty or false statement, regardless of the punishment[,]" to

its present form, which is now: "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Mueller & Kirkpatrick § 6:42.

The amendment was designed to further restrict the definition of crimes involving acts of dishonesty or false statement because "many courts had held or stated in considered opinions that Fed. R. Evid. 609(a)(2) embraced convictions for crimes that did not *on their face* involve elements of dishonesty or false statements *if on their facts* they involved dishonesty or false statement." Mueller & Kirkpatrick § 6:42 (emphasis in original).  As a result of the amendment, "a conviction fits Fed. R. Evid. 609(a)(2) only if a criminal act that is necessary in proving the charged crime was itself an act of dishonesty or false statement." Mueller & Kirkpatrick § 6:42.

Because the crime for which Mr. Stephen was convicted on November 20, 2003 was not itself an act of dishonesty or false statement, it is not admissible under Rule 609(a)(2).

## II.    Evidence Of Narcotics And Related Paraphernalia Allegedly Recovered From The Premises Should Be Excluded From Trial.[6]

As with Mr. Stephen's November 20, 2003 conviction, Defendants' alleged discovery of approximately twenty-five ounces of cocaine/crack-cocaine and related paraphernalia, namely a metal strainer with powder residue, during their search of the Premises on July 10, 2002 does not make the existence of any fact that is of consequence to the determination of this action more or less probable and could only serve to unfairly

---

[6]    *See* Ex. 9, Search Warrant Plan Post-Execution (stating that approximately 25 ounces of alleged cocaine and crack cocaine and a metal strainer with powder residue were recovered after a search of the Premises).

prejudice the Stephens and confuse the jury.   Accordingly, this evidence should be excluded pursuant to Rules 402 and 403.

As an initial matter, it is undisputed that the controlled substance was not recovered by Defendants until *after* Mr. Stephen was subdued and handcuffed. (Ex. 3, E. Bourdon Dep. at 123: 7-18; 125:12-126:19).   Consequently, the exact the nature and quantity of the drugs could not possibly have guided Defendants' determination as to how much force to use against Mr. Stephen and his son.   Thus, the only conceivable reason why Defendants would seek to introduce evidence concerning the nature and quantity of the controlled substance allegedly recovered from the Premises is to improperly cast Mr. Stephen in a negative light in front of the jury.   Courts have routinely rejected these gratuitous offerings, and this Court should do the same. *See Gregory v. Oliver*, No. 00 C 5984, 2003 WL 1860270, at *2 (N.D. Ill. Apr. 9, 2003) (excluding evidence of a drug pipe found on the person of an excessive force plaintiff after he was seized by defendants); *Pinkney v. Thomas*, No. 1:07-CV-186, 2008 WL 4514830, at *3 (N.D. Ind. Oct. 7, 2008) (finding risk of prejudice substantially outweighed probative value of evidence that plaintiff was in possession of contraband during excessive force incident since police officer did not know that plaintiff had drugs on him when he initiated contact).

In *Gregory*, the district court characterized the defendants' attempt to introduce evidence of drug paraphernalia recovered after a seizure as "smack[ing] of a bald effort to place [plaintiff] in a bad light with evidence that does not bear directly on what is truly at issue." *Id.* The court further stated that because the plaintiff was not in a position to contest the probable cause for the arrest for that case, "what defendants found on

[plaintiff] *after* the asserted imposition of excessive force that is the gravamen of his lawsuit is really not relevant." *Id.* (emphasis in original). The court held the evidence was inadmissible "even apart from any need to balance under Evid.R. 403, as to which the potential for unfair prejudice would substantially outweigh any probative force (which, as just indicated, [was] really non-existent)." *Id.*

As in *Gregory*, evidence of Defendants' alleged drug recovery was relevant only to the criminal prosecution against Mr. Stephen. This trial, however, concerns the actions of *Defendants*. Accordingly, any evidence concerning the narcotics and related paraphernalia should be excluded under Rules 402 and 403.

## III. Evidence Of Unproven Charges Against Sean Stephen, Daryl Stephen And Chestimah O'Neil Should Be Excluded From Trial.

Also among the potential evidence identified by Defendants in the Joint Pre-Trial Order are a series of exhibits and testimony that refer to unproven charges against the Stephens and third-party witness, Chestimah O'Neil. Because these unproven charges have no probative value and would create a risk of unfair prejudice to the Stephens, they should be excluded from trial pursuant to Rules 402, 403, 404(b), 608 and 609.

As this Court has recognized:

> [I]mpeachment of a witness by evidence or inquiry as to prior arrests or charges is clearly improper. The mere fact that a person has been previously charged or accused has no probative value. There is absolutely no logical connection between a prior unproven charge and that witness' credibility.

*Goines v. Walker*, No. 97-CV-3512, 2000 WL 976657, at *8 (E.D.N.Y. July 12, 2000) (quoting *People v. Cook*, 37 N.Y.2d 591, 596 (1975); *People v. Sigl*, 124 A.D.2d 1053, 1054 (4th Dep't 1986)); *Stephen v. LeFevre*, 467 F. Supp. 1026, 1028-29 (D.C.N.Y.

1979) (same).   Thus, it should come as no surprise that arrests are generally not admissible as evidence under the Rules of Evidence, for purposes of impeachment or as character evidence under (Rule 404(b)).  *See Daniels*, 986 F. Supp. at 252 (holding that plaintiff's arrests that did not result in convictions were not admissible under Federal Rule of Evidence 608(b)); *Williams v. McCarthy*, No. 05 Civ. 10230(SAS), 2007 WL 3125314, at *2 (S.D.N.Y. Oct. 25, 2007)  (finding evidence of arrest that did not lead to conviction inadmissible under rule 609); *Moore v. City of Chicago*, No. 02 C 5130, 2008 WL 4549137 (N.D. Ill. Apr. 15, 2008) ("Generally, arrests are not admissible as evidence under the Rules of Evidence, for purposes of impeachment or as character evidence [under] Rule 404(b)."); *see Gregory v. Oliver*, No. 00 C 5984, 2003 WL 1860270, at *1 (N.D. Ill. Apr. 9, 2003) ("Arrests that have not led to convictions are classic candidates for exclusion under Fed.R.Evid. ... (404(b)").  Indeed, as the district court in *Daniels* observed, "[a]rrest without more does not ... impeach the integrity or impair the credibility of a witness...."  Daniels, 986 F. Supp. at 252 (internal quotation marks and citations omitted).

The most glaring example of evidence relating to an unproven charge that Defendants have indicated that they intend to offer stems from Mr. Stephen's "mugshot" from July 10, 2002.[7]  In a trial about whether Defendants exercised excessive force, allowing into evidence of an unsubstantiated and unproven charge of resisting arrest would carry such an extreme level of prejudice that it would irreparably taint the jury's

---

[7]      Plaintiffs offered to stipulate to the admissibility of the "mugshot," provided that Defendants agreed to redact a reference to a "resisting arrest" charge that was never brought against Mr. Stephen. Although Defendants are aware that Mr. Stephen was never prosecuted for this charge, Defendants nonetheless rejected Plaintiffs' offer.

perception of the facts of the incident at issue.[8]   Indeed, allowing Defendants to introduce evidence of a resisting arrest charge that was never pursued would not only be highly corrosive to the Stephens' case and unfairly prejudicial, but it would also mislead the jury into thinking that Mr. Stephen did in fact resist arrest—a contention that finds no support in the record.   There is also a risk that the jury would improperly attach the same level of weight and significance to the unproven charge as they would a conviction.   Defendants, on the other hand, would suffer no prejudice as a result if evidence relating to a resisting arrest charge were excluded because they will have ample opportunity to question the Stephens about their actions during the incident. Unlike Defendants, the Stephens actually recall the egregious events of July 10, 2002. *See supra* at 2-4.

In addition to resisting arrest, Mr. Stephen was also charged with criminal possession of a controlled substance in the first degree, criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the seventh degree, criminally using drug paraphernalia in the second degree, and endangering the welfare of a child, all in connection with the July 10, 2002 incident. *See e.g.* Ex. 17, District Attorney Voluntary Disclosure Form; Ex. 18 Criminal Court Complaint.   As stated, however, all of theses charges brought against Mr. Stephen, with the exception of criminal possession of a controlled substance in the third degree, were

---

[8]   The foundation of this particular arrest is particularly weak given that most of the Defendants have claimed a lack of recollection as to what transpired at 1316 Sterling Place on July 10, 2002. *See, e.g.,* Ex. 11, Dec. 12, 2007 Deposition of Michael Iliadis at 147:11-13; 186:3-11; Ex. 12, Dec. 6, 2007 Deposition of Richard Miller at 173:3-20; 201:24 – 202:7; Ex. 13, Jan. 9, 2008 Deposition of Derek Dunston at 116:15-18; Ex. 14 Jan. 14, 2008 Deposition of Terrence Brill at 74:18-24; Ex. 15, January 17, 2008 Deposition of Patrick Coleman at 73:25 – 74:3; Ex. 4, Jan. 29, 2008 Deposition of Jose Hernandez at 116:6-15; Ex. 16 February 20, 2008 Deposition of J. White at 129:24 – 130:12; 141:5.

ultimately dismissed.[9]   As with the resisting arrest charge, evidence of the other dismissed charges brought against Mr. Stephen in connection with this incident should be excluded from trial because they are not probative of Defendants' conduct, create a danger of unfair prejudice for the Stephens, and are likely to mislead the jury into thinking Mr. Stephen committed crimes that he was never convicted of.

Nor should Defendants be permitted to introduce evidence of any other arrests of the Stephens or Ms. O'Neil.  Defendants have not, and cannot, offer proof that any of these arrests ever led to a conviction.  After all, as the court in *Daniels* reminded, "[arrests happen] to the innocent as well as the guilty." Daniels, 986 F. Supp. at 252. Moreover, with respect to the purported arrest of Daryl Stephen as a juvenile, the records related to that arrest have been sealed.  Thus, even if that arrest had blossomed into a conviction, it would be inadmissible under Rule 609(d).

For all these reasons, Plaintiffs respectfully request that any evidence relating to unproven charges for the Stephens and Ms. O'Neil be excluded from trial.

## CONCLUSION

The Stephens respectfully request that the Court grant their motion to exclude (1) evidence of Sean Stephen's conviction for criminal possession of a controlled substance in the third degree; (2) evidence concerning the nature and quantity of the narcotics and related paraphernalia allegedly recovered from the Premises; and (3) evidence concerning the arrest history of the Stephens and Chestimah O'Neil (including evidence of all dismissed charges against Sean Stephen arising from the incident at issue).

---

[9]     Evidence concerning Mr. Stephen's arrest for criminal possession of a controlled substance in the third degree (the charge to which he pled guilty) should be excluded from trial for the same reasons as his conviction for the same offense. *See supra* at § I.

Dated: New York, New York
       January 30, 2009

Respectfully submitted,

Joseph De Simone
David McGill
Shane B. Kelbley

MAYER, BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorney for Plaintiffs*

25