UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SEAN STEPHEN and DARYL STEPHEN,

                Plaintiffs,

-against-

POLICE OFFICER JOHN HANLEY, Shield No. 13199, POLICE OFFICER EDGAR BOURDON, Shield No. 30988, SERGEANT JUAN WHITE, POLICE OFFICER MICHAEL ILIADIS, POLICE OFFICER TERRANCE BRILL, POLICE OFFICE PATRICK COLEMAN, POLICE OFFICER DEREK DUNSTON, POLICE OFFICE RICHARD MILLER, and DETECTIVE JOSE HERNANDEZ,

                Defendants.

03-CV-6226 (KAM)

ECF Case

## REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS *IN LIMINE* TO EXCLUDE CERTAIN EVIDENCE FROM TRIAL

MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Plaintiffs*

Plaintiffs Sean and Daryl Stephen (collectively, "Plaintiffs") hereby submit the following memorandum of law in further support of their motion *In Limine*.

## ARGUMENT

I. **EVIDENCE CONCERNING DARYL STEPHEN'S JUVENILE ADJUDICATION SHOULD BE EXCLUDED.**

   A. <u>The Fact Of The Juvenile Adjudication Is Not Admissible At Trial</u>.

The only potential trial exhibit that references Daryl Stephen's youthful offender adjudication is an interrogatory response that Defendants listed as a potential impeachment exhibit, but the Federal Rules of Evidence ("Rules") explicitly prohibit the impeachment of a witness in a civil trial with evidence of a juvenile adjudication. *See* FED. R. EVID. 609(d) ("Evidence of juvenile adjudication is generally not admissible under this rule."); *see* Advisory Committee Notes to Rule 609 ("The prevailing view has been that a juvenile adjudication is not usable for impeachment"). Because Defendants no doubt recognize that the youthful offender adjudication is inadmissible as impeachment evidence, Defendants improperly argue that Daryl Stephen's 2005 youthful offender adjudication for hindering the prosecution in the second degree ("hindering the prosecution") should be admitted to address the substantive issues of causation and damages. *See* Defendants' Opposition To Plaintiffs' Motion In Limine To Exclude Certain Evidence From Trial (Dated Feb. 27, 2009) ("Def. Opp.") at 7. In other words, Defendants now seek to use an exhibit that they specifically designated for impeachment purposes for purposes other than impeachment. This Court has already shown Defendants leniency once before by permitting Defendants to list new trial exhibits more than two months after the Joint Pre-Trial Order was due. Allowing Defendants to amend their exhibit designations a second time *in the midst of motion practice concerning the*

*very exhibits at issue* would irreparably prejudice Plaintiffs, who were entitled to rely on Defendants' exhibit designations when preparing their *in limine* motion. This Court should not permit Defendants to circumvent Rule 609(d) by making yet another untimely alteration to their proposed exhibit list.

But even if this Court were to allow Defendants to amend their exhibit designations in the midst of motion practice regarding those designations, Defendants' new theories of admissibility lack supporting authority and stand in tension with the rationale behind Rule 609(d) and public policy supporting the confidentiality of juvenile records. Defendants' reliance on two <u>criminal</u> cases, *United States v. Martino*, 759 F.2d 998 (2d Cir. 1985) and *United States v. Burrell*, 289 F.3d 220 (2d Cir. 2002) in support their argument is entirely misplaced, as the courts in those cases admitted the juvenile adjudications at issue under Rule 404(b) as proof of the criminal defendants' knowledge or intent – factors that are not at issue for a plaintiff in a civil case. Accordingly, *Martino*[1] and *Burrell*[2] are inapposite.

---

[1] In *Martino*, a defendant appealed his conviction for conspiring to distribute and possess with intent to distribute heroin. *Martino*, 759 F.2d at 1000. The defendant denied that he had the requisite knowledge or intent to demonstrate his participation in the conspiracy charged. *Id*. at 1004. Pursuant to Rule 404(b), the government offered, and the district court admitted, evidence of an eleven-year-old prior conviction of the defendant for federal narcotics offenses, of which the defendant was adjudicated a youthful offender during sentencing. *Id*. The district court concluded, and the Second Circuit agreed, that because the defendant placed in issue the question of knowledge and intent regarding his association with the alleged co-conspirators on at least three separate occasions, the government was entitled to offer prior similar act evidence to aid the jury in assessing the defendant's intentions during his presence on three separate occasions during the ongoing drug transactions. *Id*. at 1005.

[2] In *Burrell*, four defendants appealed from their convictions and resulting sentences for a variety of narcotics related offenses. *Burrell*, 289 F.3d at 222. One defendant challenged the district court's admission into evidence of both his plea allocution to a prior charge, which resulted in an adjudication that he was a youthful offender, and a prior conviction as an adult. *Id*. at 223. Significantly, both convictions were for acts included in the federally charged conspiracy at issue in *Burrell*. *Id*. In providing its rationale for admitting the juvenile adjudication, the court stated that "[a]cts that a conspiracy defendant commits as a minor in furtherance of a conspiracy are admissible to show his participation in the conspiracy if the defendant ratifies his participation in the conspiracy after his eighteenth birthday as [the defendant], who was eighteen at the time of his second arrest, did." *Id*. at 224. As this case involves no allegations of conspiracy against Daryl Stephen, the reasoning of *Burrell* is clearly distinguishable.

2

Because Defendants' attempt to amend their exhibit designations comes more than 100 days after the deadline for the Joint Pre-Trial Order and in the midst of motion practice relating to those very designations, and because Defendants have not cited any authority that would support admission of Daryl's juvenile adjudication outside the context of criminal cases implicating Rule 404(b), this Court, consistent with Rule 609(d) and sound public policy, should exclude any evidence relating to the <u>sealed</u> juvenile adjudication from trial.

**B.     The Facts Underlying Daryl Stephen's Youthful Offender Adjudication Are Not Admissible At Trial.**

Defendants next argue that the they should be permitted to offer into evidence the facts underlying Daryl's adjudication.  *See* Def. Opp. at 8.  Such a result would undermine, if not entirely eviscerate, the purpose of Rule 609(d), which bars evidence of juvenile adjudications in civil suits.  *See* FED. R. EVID. 609(d).  Not only would admitting the underlying facts and circumstances of the adjudication be a clear end-run around Rule 609(d), but eliciting the underlying details of a juvenile adjudication, which "[b]y virtue of its informality, frequently diminished quantum of required proof, and other departures from accepted standards for criminal trials . . . lack[s] . . . precision," would create an even graver danger of unfair prejudice than admitting evidence of the adjudication itself. *See* Advisory Committee Notes to Rule 609(d).

Moreover, apart from the bare reference to the juvenile adjudication itself, which is plainly inadmissible under Rule 609(d), Defendants have not made any proffer whatsoever concerning the actual facts and circumstances surrounding the juvenile adjudication that they are seeking to enter into evidence.  Defendants rank speculation and unsubstantiated theories do not come close to presenting an adequate foundation for

3

admitting the underlying facts and circumstances surrounding an inadmissible juvenile adjudication, the records of which have been <u>sealed</u> by law in accordance with sound public policy. *See id.* ("Practical problems of administration are raised by the common provisions in juvenile legislation that records be kept confidential and that they be destroyed after a short time."). Allowing Defendants to probe into the underlying facts of a sealed juvenile adjudication in open court for purposes of a civil trial would not only be a fishing expedition, but it would undermine the policy rationales behind Rule 609(d).

Significantly, the cases that Defendants cite in support of admissibility do not accurately reflect the state of <u>federal</u> law on this issue, as embodied by the Federal Rules of Evidence. For example, with respect to *United States v. Canniff*, 521 F.2d 565, 568-69 (2d Cir. 1975), Defendants merely cite the Second Circuit's recitation of New York <u>state</u> law governing youthful offender adjudications and disregard the court's explicit statement that New York law "[was] not controlling in [that] federal proceeding." *Canniff* at 568. In its overview of state law, the *Canniff* court stated that a "cross-examiner may… bring out the facts underlying the adjudication so long as he does not elicit the adjudication itself." *Canniff* at 568-69. The court's observation was not intended to set forth the Second Circuit's opinion as to whether the facts underlying a youthful offender adjudication may be inquired into during a civil trial. In fact, much to the contrary, the court stated:

> We reject the government's argument that the New York state adjudication should be deemed a conviction for purposes of federal law and hence a permissible subject for cross-examination, which is advanced on the ground that otherwise the federal prosecutor, absent a conviction, might be precluded from inquiring into the facts underlying the youthful offender adjudication…. The fact remains that federal and state law is in accord that these adjudications are

4

> not criminal convictions and therefore that they cannot later be used to impeach a defendant or witness, regardless whether or not New York courts allow a cross-examiner to question a defendant about the facts underlying the adjudication.

*Id*. at 570 (internal citation and quotation marks omitted). The court then proceeded to state that:

> Since no attempt was made in this case to probe into the background facts, we are not called upon to decide whether federal courts should, at least in a case where the witness has been adjudicated a youthful offender in New York, follow that state's rule of permitting the <u>prosecutor</u> to impeach the witness by bringing out the facts underlying the adjudication. It is readily apparent, however, that the formulation of a federal rule on the subject would require careful study and might well be influenced by such factors as the extent to which the door has been opened upon direct examination by the witness' own counsel and whether disclosure of an adjudication (which bears the mark of society's condemnation) is less harmful to the witness and less time-consuming than to parade the underlying facts before the jury.

*Id*. at 570 n.4 (emphasis added). As Plaintiffs excessive force case is a civil matter governed by <u>federal</u> law, and Plaintiffs in no way intend to open the door to Daryl's adjudication on direct examination, *Canniff* provides no support for the admissibility of the facts underlying Daryl's adjudication.

Defendants' citation to *Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 205 (E.D.N.Y. 2002) fairs no better. In *Jeremiah*, the court addressed a petitioner's habeas corpus claim alleging ineffective assistance of counsel in New York Supreme Court. *Id*. at 198. In rejecting the petition, the court noted that the petitioner's contentions were refuted by the trial transcript and that pursuant to <u>state</u> law, "the trial court precluded the prosecution from adducing evidence of petitioner's adjudication as a youthful offender based upon his

5

plea of guilty to petit larceny, but permitted inquiry into the facts underlying that adjudication." *Id*. at 205.  The court further found that the "ruling was an appropriate exercise of discretion under New York law, which allows inquiry into any prior bad act bearing on credibility, including acts resulting in juvenile or youthful offender adjudications, but prohibits the prosecutor from bringing out the fact of such adjudication to impeach credibility." *Id*. (emphasis added and citations omitted).  Thus, Defendants' citation to *Jeremiah* merely reiterates what prosecutors in the state courts of New York are permitted to inquire into with respect to youthful offender adjudications.  Neither *Canniff* nor *Jeremiah* support the proposition that a party in a civil case may probe into to the facts underlying a witness for an opposing party's youthful offender adjudication.

Even assuming *arguendo* that Defendants had authority to support the admissibility of the underlying facts of a juvenile adjudication in the context of a civil case, Defendants offer nothing but baseless speculation to demonstrate the relevance of underlying facts of Daryl's juvenile adjudication.  And the fact that Defendants' own expert witness failed to make any mention of the adjudication as a potential alternate cause for Daryl's mental and emotional damages in his report is telling.  *See generally* Forensic Psychiatric Evaluation By Dr. Alex Weintrob ("Weintrob Report").  Indeed, Defendants' expert did not even reference Daryl's interrogatory response as a source for his report.  *See id.* at 2 (omitting Daryl's interrogatory response from the "sources upon which report is based").

Accordingly, because admitting evidence of Daryl's juvenile adjudication or allowing Defendants to inquire into the facts underlying the juvenile adjudication has no place in a civil trial and would countermand the letter and spirit of Rule 609(d), as well as

6

sound public policy that supports the confidentiality of juvenile records, Defendants should be precluded from offering or soliciting any evidence relating to Daryl's juvenile adjudication at trial.

## II. THE EMPLOYMENT RECORDS SHOULD BE EXCLUDED.

On January 22, 2009, Defendants informed Plaintiffs that they intended to introduce Daryl Stephen's employment records from BJ's Wholesale Club ("BJ's") as impeachment exhibits. Four days later, on January 26, 2009, Defendants informed Plaintiffs for the first time that they intended to introduce three separate documents from the sixty-six page compilation of Daryl's employment records from BJ's as exhibits for their case-in-chief.[3] Although Plaintiffs objected to the identification of all the potential employment record exhibits, including the three potential case-in-chief exhibits, as untimely, this Court generously allowed Defendants to amend the Joint Pre-Trial Order to include them as potential trial exhibits. At no time, however, did Defendants seek to identify any employment records relating to Daryl Stephen's test scores or job related exams as potential exhibits for use in their case-in-chief. Yet, in opposing Plaintiffs' motion *in limine* relating to the employment records, Defendants have indicated their intention to introduce these test scores or job related exams and related records as "objective evidence" relevant to assessing Plaintiffs' claims for damages. *See* Def. Opp. at 4. Thus, Defendants now are seeking to use additional employment records, beyond those that this Court permitted them to identify for use in their case-in-chief, as substantive evidence for purposes other than impeachment. This second, and even more

---

[3] Plaintiffs inadvertently characterized all of the employment records as potential impeachment exhibits in their opening memorandum of law. Defendants correctly noted that the Court permitted Defendants to list three – *and only three* – of the proffered employment record exhibits as case-in-chief exhibits after the deadline for the Joint Pre-Trial Order had passed.

7

belated attempt to identify potential case-in-chief exhibits long after the deadline for the Joint Pre-Trial Order should not be countenanced by this Court.

Nevertheless, regardless of whether Defendants intend to use the potential exhibits in their case-in-chief or for purposes of impeachment, this Court should exclude <u>all</u> the proffered employment records because any minimal probative value associated with this evidence would be substantially outweighed by concerns about juror confusion and waste of time, especially considering that Plaintiffs have offered to stipulate to the fact and duration of Daryl Stephen's employment at BJ's.

### A.     The Employment Records Have Limited Probative Value.

Plaintiffs concede that the fact that Daryl Stephen held a job at BJ's and the duration of his employment may hold some slight probative value in relation to Daryl Stephen's damages claim. But introducing sixty-six pages of employment records, which consists primarily of general hiring data, employee references and corrective interview forms, would not further assist the jury in evaluating the legitimacy of Daryl Stephen's damages. Defendants' assertions to the contrary are belied by the fact that they have not asked their expert to opine on the alleged significance of any of the BJ's employment records. *See generally* Weintrob Report at 2 (listing sources relied upon). The reality is that there is a real danger that the introduction of these records will result in a trial within the trial, as Plaintiffs may be compelled to spend a considerable amount of time rebutting claims made in or about the employment records that have little or nothing to do with this case, but which may nonetheless portray Daryl Stephen in a negative light.[4] The resulting mini-trial would be nothing but a distraction for the jury and a waste of time.

---

[4]     In the event that the Court permits the employment records into evidence, Plaintiffs reserve the right to call rebuttal witnesses with knowledge of the employment records at issue.

The three cases that Defendants cite in support of the admissibility of the employment records – *Kerman v. The City of New York*, 374 F.3d 93 (2d Cir. 2004); *Llerando-Phipps v. The City of New York*, 390 F. Supp. 2d 372 (S.D.N.Y. 2005); and *Sedney v. C.O. Blot*, No. 00 civ 1302, 2003 U.S. Dist. LEXIS 21364 (S.D.N.Y. Dec. 1, 2003) – are all clearly distinguishable. All of those cases involved attempts to draw causal connections between the alleged harm and events that transpired prior to the incidents at issue. Here, Defendants have not even alleged a causal link between Daryl's physical, emotional and psychological damages and the records of his employment at BJ's, which were created approximately four years after the incident at issue.

Because each of these cases is distinguishable from the instant matter, any evidence concerning Daryl's employment at BJ's should be limited to the fact and duration of his employment, particularly since admission of the employment records carries with it substantial risks of juror confusion and waste of time.

**B.      The Employment Records are Barred by the Collateral Impeachment Rule.**

With respect to any employment records that Defendants have identified as potential impeachment exhibits, those records should also be excluded under the collateral impeachment rule. *See Lugo v. Edwards*, No. 97 Civ. 7789, 1998 U.S. Dist. LEXIS 14131, at *15 (S.D.N.Y. Sept. 9, 1998) ("collateral evidence is evidence that is not relevant to some issue other than credibility and it is not offered for the purpose of disproving facts set forth by a witness for the opposing side on direct examination."). Where "the only basis given at trial for introducing the foregoing evidence [is] . . . to impeach [a witness's] credibility, . . . its admission [is] barred by the collateral impeachment rule." *Id*. (quoting *People v. Innis*, 83 N.Y.2d 653, 612 (1994)).

9

As noted earlier, notwithstanding Defendants' stated intention "to offer the employment records into evidence to challenge plaintiffs' claim for damages," only three documents from the employment records compilation were identified as potential case-in-chief exhibits. *See* Def. Opp. at 2 n.2. Therefore, to the extent that this Court deems the three case-in-chief exhibits admissible, the remaining employment records, which Defendants designated as impeachment exhibits, are inadmissible under the collateral impeachment rule.

## CONCLUSION

For the reasons stated above, Plaintiffs request that the Court grant their motion *In Limine*, together with any other relief this Court may deem just and proper.

Dated: March 6, 2009

                    Respectfully submitted,

                    MAYER BROWN LLP

                    By: /S/ Joseph De Simone

                    Joseph De Simone
                    David McGill
                    Domenic Cervoni
                    1675 Broadway
                    New York, NY 10019
                    Tel: (212) 506-2500
                    Fax: (212) 849-2559
                    Email:jdesimone@mayerbrown.com
                    Email: dmcgill@mayerbrown.com
                    Email: dcervoni@mayerbrown.com
                    *Attorneys for Plaintiffs*