```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
SEAN STEPHEN and DARYL STEPHEN,

                    Plaintiffs,         MEMORANDUM AND ORDER
                                        03-CV-6226(KAM)(LB)
        -against-


POLICE OFFICER JOHN HANLEY,Shield
No. 13199, POLICE OFFICER EDGAR
BOURDON, Shield No. 30988 SERGEANT
JUAN WHITE, POLICE OFFICER MICHAEL
ILIADIS, POLICE OFFICER TERRANCE
BRILL, POLICE OFFICER PATRICK
COLEMAN, POLICE OFFICER DEREK
DUNSTON, POLICE OFFICER RICHARD
MILLER, DETECTIVE JOSE HERNANDEZ,

                    Defendants.
-------------------------------------X
```

**MATSUMOTO, United States District Judge:**

Plaintiffs Sean Stephen and his son Daryl Stephen brought this action against New York City Police Department ("NYPD") officers, a detective, and a sergeant, alleging violations of the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, for allegedly using excessive force during the execution of a search warrant on July 10, 2002. Pending before the court is the plaintiffs' motion for sanctions based on spoliation of evidence and failure to timely produce evidence. Specifically, plaintiffs allege that sanctions should be imposed due to (1) certain of the defendants' destruction of or failure to produce memo book entries pertaining to the July

10, 2002 incident; (2) defendants' failure to produce, or their destruction of, radio communications and related documents regarding the July 10, 2002 incident; (3) defendants' belated expert witness disclosures pursuant to Fed. R. Civ. P. 26(a)(2); and (4) documents pertaining to a 1989 discharge/assault report of defendant Miller.

## BACKGROUND

Plaintiffs' action arises from defendants' alleged use of excessive force during the execution of a search warrant and the arrest of plaintiff Sean Stephen on July 10, 2002 ("the July 2002 incident"). On December 3, 2003, plaintiffs commenced this action pro se and subsequently obtained pro bono counsel. After a series of amended complaints, plaintiffs filed their final Amended Complaint on February 4, 2006 (Amended Complaint). Defendants filed their Amended Answer on February 16, 2006. At a scheduling conference on April 24, 2007, following the appearance by plaintiffs' current counsel, Judge Bloom set a discovery deadline of August 31, 2007. Discovery proceeded before Judge Bloom and, after several extensions, Judge Bloom ordered that expert reports be exchanged by March 21, 2008. Discovery closed on June 19, 2008. (Dkt. Nos. 141, 157.) On January 12, 2009, the court ordered the parties to appear for a final pre-trial conference on April 6, 2009, scheduled briefing

for the parties' motions in limine and plaintiffs' spoliation motion, set the commencement of trial for April 13, 2009, and ordered dates for the filing of the Amended Joint Pre-trial Order, voir dire, statement of the case, and jury charges.

On February 20, 2009, the plaintiffs filed their motion for spoliation and sanctions presently before the court. On February 24, 2009, the court adjourned the trial until April 22, 2009. On February 27, 2009, due to a scheduling conflict with the parties, the court adjourned the trial again until June 22, 2009. All other dates set by the court on January 12, 2009 remained effective. On March 26, 2009, the court rescheduled the trial date to June 1, 2009, after plaintiffs' counsel indicated that plaintiffs were anxious for trial to commence. The final pre-trial conference is scheduled for May 22, 2009.

**DISCUSSION**

**I. Spoliation of Radio Communications Documents and Memo Books**

In their Memorandum of Law and Reply Memorandum of Law submitted in support of their motions for sanctions, plaintiffs allege that the defendants have destroyed or failed to produce requested documents pertaining to radio communications (Pls. Mem. at 6-7; Pls. Reply at 6.) and memo book entries by defendants Miller, Hernandez, Dunston, Brill, Coleman, and White relating to the July 2002 incident. (Pls. Mem. at 3-6; Pls.

Reply at 1-5.)  Due to the alleged spoliation of this evidence, plaintiffs seek an adverse inference. (Pls. Mem at 12-17.)  In response, defendants allege that memo books for these defendants and radio communication documents do not exist and never existed.  (Defs. Opp'n. at 6-12.)

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  Courts have broad discretion to impose sanctions to remedy harm resulting from spoliation, including an adverse inference jury instruction at trial.  See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107-08 (2d Cir. 2002); Reilly v. NatWest Markets Group Inc., 181 F.3d 253, 268 (2d Cir. 1999).  "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  Residential Funding Corp., 306 F.3d at 107 (citing Byrnie v. Town of Cromwell, 243 F.3d 93, 107-12 (2d Cir. 2001)).  In

addition to the foregoing three requirements for spoliation, the court states the obvious: the evidence must have existed.

Plaintiffs' motion for spoliation pertaining to radio communications is denied because the plaintiffs have not established that radio communication and related documents pertaining to the July 2002 incident ever existed, let alone were destroyed. Defendants note that despite searching for radio communications and reports, defendants affirmed by letter dated January 27, 2009 that "defendants are not in possession of any radio communications which relate to the incident." Defendants further assert that there is no evidence that any 911 calls or radios calls were made during the execution of the search warrant and, despite their search, defendants "found that there are no radio communications pertaining to the subject incident." (Def. Opp'n. Mem. at 11-12.) Therefore, because defendants have confirmed that no records of radio communications exist, the spoliation of evidence doctrine is inapplicable. See, e.g., United States v. Perez-Velazquez, 488 F. Supp. 2d 82, 85, 85 n.4 (D.P.R. 2007); Kreyn v. Gateway Target, No. 05-CIV-3175(ERK)(VVP), 2006 WL 3732463 at *2 (E.D.N.Y. Dec. 17, 2006); Riddle v. Liz Claiborne, Inc., No. 00-CIV-1374(MBM)(HBP), 2003 U.S. Dist. LEXIS 14327 at *5-6 (S.D.N.Y. Aug. 19, 2003) (the lack of evidence that missing documents ever existed, and therefore were destroyed, was not

spoliation). Moreover, plaintiffs do not identify any court orders that defendants have violated regarding the production of radio transmissions and related documents.

Similarly, plaintiffs' motion for sanctions for alleged spoliation based on defendants' failure to produce memo book entries pertaining to the July 2002 incident for the defendants Miller, Dunston, Hernandez, Coleman, and Brill fails because plaintiffs have not established that this evidence ever existed and was destroyed or that defendants violated a court order. See id.; compare with Creative Res. Group of N.J. v. Creative Res. Group, Inc., 212 F.R.D. 94, 106 (2d Cir. 2002) (a failure to produce evidence that was established to have actually existed satisfied the "obligation" criterion of the adverse inference instruction). Plaintiffs cite defendants' deposition testimony to support the existence of the memo books relating to the July 2002 incident, but the testimony falls short of establishing such. Miller's testimony, cited by plaintiffs, refers to a memo book entry kept for a separate incident. (Pls. Mem. 4.) Testimony that a memo book was kept or an entry made for one incident does not establish that it was kept or made for the July 2002 incident. See Kreyn, 2006 WL 3732463 at *2 (stating that just because there were video cameras in the store does not establish that there is videotape of the particular aisle where the incident occurred). The

6

testimony plaintiff cites from the depositions of Dunston, Coleman, and Hernandez simply states that these defendants were never generally asked to preserve evidence. (Pls. Mem. at 5 and cited exhibits.) The fact that these defendants were never asked to preserve evidence does not establish that there were, in fact, memo books, that entries were made in the memo books regarding the June 2002 incident, or that they were destroyed. Although defendant Brill's testimony cited by plaintiff appears to acknowledge the existence of a memo book, and he states that no one would have needed to ask him to preserve it, thus suggesting that he would not destroy it, he did not testify that he made an entry regarding the July 2002 incident at bar. (Id.) The testimony cited by plaintiffs does not establish that there were, in fact, memo books and memo book entries by the foregoing defendants regarding this incident.

Defendant White's memo book entries stand in a different posture than the defendants' memo books discussed above because White's testimony establishes that he had a memo book and destroyed it in August 2006. The court must therefore determine if plaintiffs have established the above-listed criteria warranting an adverse inference. First, the court finds that defendant White had an obligation to preserve the memo book at the time that he destroyed it. (Pls. Ex. 3, p. 142-143.) "The obligation to preserve evidence arises when the

party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). White should have known that his memo book might be relevant to this litigation as of November 2004, upon the service of an earlier Complaint which the named defendant White as a defendant. (See Dkt. No. 36 and Entry dtd. 11/22/04.) Therefore, White had a duty to preserve the memo book at the time he destroyed it in August 2006.

The court additionally finds that the second criterion, culpable state of mind, is satisfied. The "culpable state of mind factor" is satisfied "by a showing that the evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], or *negligently*.'" Residential Funding Corp., 306 F.3d at 108 (citations omitted) (emphasis in original). At his deposition, White admitted to destroying his memo book when he retired, demonstrating that it was destroyed knowingly. (Pls. Ex. 3 p. 142-143.) Therefore, this second criterion is established.

Finally, the court addresses whether plaintiffs have established that White's memo book is "relevant" to their claims. To establish this criterion, plaintiff must "adduce sufficient evidence from which a reasonable trier of fact could infer that 'the destroyed [or unavailable] evidence would have

8

been of the nature alleged by the party affected by its destruction.'" Residental Funding Corp., 306 F. 3d at 109 (citations omitted). Although courts "must take care not to 'hold[] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,'" "'relevant' in this context means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence." Id. at 108-109 (citations omitted).

The court finds that plaintiffs have established the relevance of White's memo book for purposes of an adverse inference sanction. In particular, plaintiffs have adduced facts from which to infer that White's memo book would contain relevant information. Plaintiffs cite to White's testimony that his memo book recorded daily activities, and, presumably, this would include his whereabouts during the July 2002 incident. (Pls. Mem. at 4.) However, plaintiffs list a variety of other information the memo book "could" have provided (Pls. Mem. at 17) but adduce no facts from which to infer that that White's memo book would have revealed the information. Based on White's spoliation of his memo book, the plaintiff's motion for sanctions is granted to the extent that the jury will be instructed that they may infer that White was present at the July 2002 incident. The parties shall submit a jointly proposed instruction to the court.

As a result of the foregoing, plaintiffs' spoliation motion is granted with regard to defendant White and an adverse inference that defendant White was present during the July 2002 incident is warranted. Plaintiffs' spoliation motion with regard to the documents pertaining to radio communications and the memo books of the defendants Dunston, Hernandez, Brill, Coleman and Miller is denied. To the extent that plaintiffs argue that sanctions are appropriate pursuant to Fed. R. Civ. P. 37 for the failure of defendants to produce these materials, the court finds, in light of the foregoing, that the plaintiffs have failed to establish that these materials exist or that a court order of production was violated. Therefore, plaintiffs' motion for sanctions is denied pursuant to Rule 37.

**II. Rule 37 Sanctions for Failure to Timely Produce Rule 26 Material**

Plaintiffs additionally seek sanctions pursuant to Fed. R. Civ. P. 37 due to defendants' failure to timely produce the defendants' expert, Dr. Weintrob's, testifying history and compensation pursuant to Rule 26(a)(2)(B)(v) and (vi) of the Federal Rules of Civil Procedure ("Rule 26(a)(2) material"). Plaintiffs informed defendants of their failure to make Rule 26(a)(2) disclosures in a letter of April 2008, after learning through Dr. Weintrob's deposition that he had testified in cases within the last four years. Defendants responded to plaintiffs'

letter stating that Dr. Weintrob did not feel comfortable providing the materials without a court order and that they were irrelevant. (Pls. Mem. at 11; Pls. Reply at 8-9.) Defendants produced the Rule 26(a)(2) material after this court ordered them to do so in January 2009. Plaintiffs argue that defendants' untimely production warrants the imposition of sanctions against the defendants in the form of costs for protracted motion practice and the opportunity to reopen Dr. Weintrob's deposition. (Pls. Mem. at 10-12, 22-24; Pls. Reply at 9.)

Defendants respond that they are not to blame for their failure to disclose the Rule 26(a)(2) material because they informed plaintiffs that Dr. Weintrob would only disclose the Rule 26(a)(2) material pursuant to a court order and plaintiffs "made no further attempts to pursue the issue." (Defs. Reply at 15.) Defendants further argue that their failure to complete expert disclosure was "substantially justified" and "harmless" pursuant to Rule 37(c).

Pursuant to Rule 26, unless otherwise stipulated or ordered by the court, a party's expert witness disclosure must be accompanied by a written report that includes, <u>inter alia</u>, "a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition . . .," and "a statement of the compensation to be

paid . . . ." Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi). These disclosures must be made "at times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). After several extensions of the original deadline for the production of expert disclosures, defendants requested an extension and Judge Bloom ordered the production of expert reports by March 21, 2008. (Dkt. No. 139, court's order endorsing defs. request to extend time for expert discovery until 3/21/08.) Therefore, the court ordered defendants to disclose all Rule 26(a)(2) material by March 21, 2008 and defendants' assertion that Dr. Weintrob would not do so without a court order is inexplicable. Defendants failed to produce complete expert disclosure until January 27, 2009, after being ordered again to do so by this court during a January 12, 2009 status conference.

In finding that the defendants failed to comply with Rule 26(a)(2)(B), the court may impose sanctions unless the defendants have demonstrated that their failure was "substantially justified" or "harmless." The court finds that defendants' failure was not "substantially justified" based on the reason they proffer, i.e., that Dr. Weintrob was "uncomfortable" disclosing this information without a court order, especially given Judge Bloom's order that expert discovery be produced by March 21, 2008. If Dr. Weintrob was unwilling to comply with the Federal Rules of Civil Procedure

and Judge Bloom's order, defendants should not have retained him.  See, e.g., Fyfe v. Baker, No. 06-CIV-28, 2007 WL 1866882 at *1 (D. Vt. June 28, 2007) (stating "experts should not be offering their services in federal court if they cannot (or will not) comply with the Federal Rules and attorneys should not be retaining such experts").

Defendants' failure to comply with Rule 26 in this regard is arguably harmless because defendants cured their defective expert disclosures when they complied with a second court order of January 12, 2009, by producing the Rule 26 material on January 27, 2009.  Monetary sanctions are not justified in these circumstances.  Accord Hein v. Cuprum, 53 Fed. App'x 134, 136 (2d Cir. 2002); Coyle v. Crown Enters., No. 05-CIV-891F, 2009 U.S. Dist. LEXIS 22452, *17 (W.D.N.Y. Mar. 19, 2009).  Plaintiffs obtained expert disclosures two and a half months prior to the original trial date, and, because trial was adjourned until June 1, 2009, plaintiffs ultimately have had four months to review these materials.  Furthermore, plaintiffs were in possession of the Rule 26(a)(2) material almost a month before filing this motion and have not specified how they are harmed by the inability to depose Dr. Weintrob about the additional contents of the Rule 26(a)(2) material.  Although the plaintiffs were provided with the Rule 26(a)(2) material over nine months after the date by which they were entitled to it

pursuant to the court's order and Rule 26(a)(2), plaintiffs waited as long to notify the court of the defendants' non-compliance. Instead, plaintiffs first stated their intention to file a motion for sanctions at the January 12, 2009 conference. Plaintiffs' own conduct in this regard is relevant to determining the harm - or lack thereof - allegedly suffered by the plaintiffs as a result of defendants' noncompliance with Rule 26(a)(2).

Nonetheless, defendants' failure to comply with Judge Bloom's order and their obligation to provide expert reports and disclosures pursuant to Fed. R. Civ. P. 26(a)(2) warrants a sanction. Accord Fyfe, 2007 WL 1866882 at *1 (granting a motion to strike the expert's testimony because "[the expert's] failure to keep/provide a list of cases is both without substantial justification and not harmless. Instead, it frustrates the spirit and purpose of Rule 26 expert discovery and threatens to turn the trial into a game of blindman's bluff."). The court will allow plaintiffs to reopen Dr. Weintrob's deposition at defendants' expense and on an expedited basis to examine him for no more than four hours only as to the belatedly produced disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi). The belated deposition shall take place as soon as possible and defendants shall pay the costs for the court reporter, an expedited transcript, and other related expenses.

### III. Rule 37 Sanctions for Failure to Produce Miller Materials

Plaintiffs argue that, despite several requests, defendants have failed to produce documents relating to defendant Miller's 1989 shooting incident and subsequent investigation, which was revealed during Miller's deposition. These documents would include Internal Affairs Bureau ("IAB") reports or documents, or other documents related to the 1989 shooting incident ("Miller materials"). (Pls. Mem. at 8-9; Pls. Reply at 7-8.) The docket reflects that plaintiffs have never filed a motion to compel the production of these documents.[1]

In response, defendants do not state that these documents do not exist, but take the position that their non-production of these documents is not in violation of a court order, that discovery closed in June 2008, and, regardless, these documents are inadmissible. (Defs. Opp'n. at 13.) As defendants point out, discovery in this matter closed in June 2008 and plaintiffs never filed a motion to compel the Miller materials prior to the close of discovery. Instead, plaintiffs have filed this current motion for sanctions under Rule 37. However, to be entitled to a sanction for failure to disclose

---

[1] Although defendant Miller's deposition was the subject of several discovery disputes, the court notes that the plaintiffs never raised the defendants' failure to produce the Miller material before the court.

15

this information in the absence of a court order pursuant to Fed. R. Civ. P. 37(c)(1), defendants must have been obligated to automatically disclose the Miller materials pursuant to Rule 26(a)(1). Under Rule 26(a)(1), the only documents that a party must disclose "without awaiting a discovery request," are those "that the disclosing party . . . may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii); <u>Yaccarino v. Motor Coach Indust. Co.</u>, No. 03-CIV-4527 (CPS), 2006 U.S. Dist. LEXIS 97208 at *20 (E.D.N.Y. Sept. 29, 2006). There is no indication that the defendants intend to use these documents in support of their defenses; therefore, defendants were under no obligation to disclose the disputed Miller materials pursuant to Rules 26(a) or (e). Nor was there a court order directing defendants to disclose the Miller material. Therefore, sanctions are not warranted under Fed. R. Civ. P. 37(b)(2) or (c)(1). Plaintiffs' motion for sanctions due to defendants' non-production of the Miller material is denied.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' spoliation motion and motion for sanctions due to failure to produce certain documents are denied in part and granted in part as follows: (A) Plaintiffs' spoliation motion regarding defendant White's memo book is granted. An adverse inference that

16

defendant White was present at the July 2002 incident is permitted.  Plaintiffs' spoliation motion regarding radio communications and related documents and the memo books of defendants Miller, Dunston, Hernandez, Coleman, and Brill is denied.  (B) Plaintiffs' motion to reopen discovery and take an expedited deposition of Dr. Weintrob at defendants' expense is granted.  The deposition shall not exceed four (4) hours and shall be limited in scope to Dr. Weintrob's disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(B)(v) and (vi).  (C) Plaintiffs' motion for sanctions due to alleged non-disclosure of evidence concerning a 1989 incident involving defendant Miller is denied.

The parties shall check in with chambers and then appear for a final pre-trial conference on May 22, 2009 at 10:00 a.m. in courtroom 11D.  The parties are reminded to bring two courtesy copies of all pre-marked trial exhibits to the pre-trial conference.

**SO ORDERED.**

Dated: May 20, 2009
       Brooklyn, New York

                                         _____   /s/_____
                                         KIYO A. MATSUMOTO
                                         United States District Judge
                                         Eastern District of New York