UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
SEAN STEPHEN and DARYL STEPHEN,

                          Plaintiffs,          **MEMORANDUM AND ORDER**
                                               03-CV-6226(KAM)(LB)

      -against-


POLICE OFFICER JOHN HANLEY,Shield
No. 13199, POLICE OFFICER EDGAR
BOURDON, Shield No. 30988 SERGEANT
JUAN WHITE, POLICE OFFICER MICHAEL
ILIADIS, POLICE OFFICER TERRANCE
BRILL, POLICE OFFICER PATRICK
COLEMAN, POLICE OFFICER DEREK
DUNSTON, POLICE OFFICER RICHARD
MILLER, DETECTIVE JOSE HERNANDEZ,

                          Defendants.
-----------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiffs Sean Stephen and his son Daryl Stephen

brought this action against New York City Police Department

("NYPD") officers, a detective, and a sergeant alleging

violations of the Fourth Amendment of the United States

Constitution and 42 U.S.C. § 1983, for allegedly using excessive

force during a July 10, 2002 arrest of Sean Stephen while in his

home (the "July 2002 incident").

          Pending before the court are the parties' motions <u>in

limine</u> to preclude certain evidence at trial pursuant to Fed. R.

Evid. 401, 403, 404, and 609.  Plaintiffs seek to preclude

evidence of the following: (1) plaintiff Sean Stephen's November

1

20, 2003 conviction arising out of the July 2002 incident, for
criminal possession of a controlled substance in the third
degree; (2) the type and quantity of the narcotics and related
paraphernalia recovered from 1316 Sterling Place, Apartment 2L,
Brooklyn, New York on July 10, 2002; (3) the arrest history of
plaintiff Sean Stephen; (4) plaintiff Daryl Stephen's youthful
offender adjudication; and (5) exhibits and related testimony
pertaining to Daryl Stephen's employment records.  Defendants
seek to preclude evidence pertaining to civilian complaints or
other investigations into certain defendants' prior alleged
conduct as NYPD officers.  For the following reasons, the court
grants in part and denies in part the parties' motions.

## BACKGROUND

### I.   Procedural History

Plaintiffs commenced this action pro se on December 3,
2003.  After filing a series of amended complaints and obtaining
counsel, plaintiffs filed their final Amended Complaint on
February 4, 2006 (Amended Complaint).  (Dkt. No. 64.)
Defendants filed their Amended Answer on February 16, 2006.
(Dkt. No. 66.)  Discovery proceeded before Judge Bloom and was
closed on June 19, 2008.  (Dkt. No. 157.)  On February 20, 2009,
the parties filed the motions in limine presently before the
court.  (Dkt. Nos. 191-211.)  On March 6, 2009, plaintiffs filed

2

an additional motion *in limine* relating to evidence belatedly added by defendants to the Joint Pre-trial Order. (Dkt. No. 213.) Since filing these motions, the parties filed their Amended Joint Pre-trial Order, among other trial materials, on April 7, 2009. (Dkt. Nos. 220-226.) Trial is scheduled to commence on June 1, 2009.

The parties were ordered by the court to stipulate to as much as possible prior to the date by which their motions *in limine* were to be served on each other. Once motion practice progressed, the parties reached agreements regarding evidence included in plaintiffs' motion *in limine* to exclude hearsay testimony of Chestimah O'Neil as to whether "Daryl Stephen has girlfriend" and evidence of the arrest histories of O'Neil and Daryl Stephen. The parties stipulated that testimony from O'Neil regarding whether Daryl Stephen has a girlfriend will not be elicited. Additionally, defendants conceded that "any arrests of Daryl while he was a juvenile would not be admissible" at trial and that "the prior arrests of Ms. Chestimah O'Neil, to the extent that they did not result in convictions, cannot be used to impeach her." (Def. Opp'n. 2/13/09 p. 17.)

The parties also reached agreements regarding defendants' motion *in limine* to preclude plaintiffs' use of the NYPD's Patrol Guide and prior statements of certain witnesses in

their case-in-chief.  Plaintiffs have agreed to proffer the
NYPD's Patrol Guide solely for impeachment purposes in the
"event that Defendants affirmatively testify that their actions
on July 10, 2002 were in compliance with the standard set forth
in the patrol guide sections, or . . . that they never violated
any provisions of the Patrol Guide." (Pls. Reply at 2.)
Defendants stipulated that they do not intend to offer such
evidence.  Therefore, the motion concerning that evidence is
moot.  Furthermore, plaintiffs stipulated that their use of
witness statements will be for rehabilitation purposes only.
Defendants conceded that this is a proper use; therefore,
defendants' motion with regard to this evidence is also moot.

## II.  **Summary of the Facts**

Plaintiffs Sean Stephen, and his son, Daryl Stephen,
allege that defendants forcibly entered Apartment 2L at 1316
Sterling Place, Brooklyn, New York on July 10, 2002 at 4:30 a.m.
pursuant to a search warrant for guns and drugs at the premises.
Plaintiffs were asleep at the time the NYPD officers entered the
apartment and allege that they were repeatedly punched and
kicked and were called racial epithets.  Plaintiff Daryl
Stephen, fourteen years old at the time, allegedly lost
consciousness as a result of the beating by the NYPD officers
and underwent reconstructive surgery on his ear.  Both
plaintiffs were handcuffed and the apartment was searched.

Plaintiff Sean Stephen was allegedly dragged out of the apartment and placed into a police car, where the beating continued. (Pls. 1/30/09 Mot. pp. 2-4.)

During the search of the apartment, the officers recovered twenty-five ounces of crack/cocaine, a metal strainer with power residue, sixty-six dollars, and miscellaneous papers. (Pls. 1/30/09 Mot. Ex. 9.) With respect to the July 10, 2002 incident, Sean Stephen pled guilty to criminal possession of a controlled substance in the third degree under New York State law on November 20, 2003. Sean Stephen was also charged with criminal possession of a controlled substance in the first and seventh degrees, criminally using drug paraphernalia in the second degree, endangering the welfare of a child, and resisting arrest. These charges were subsequently dropped.

Based on these and additional allegations, plaintiffs commenced the instant action claiming that the officers used excessive force against Sean Stephen and Daryl Stephen in violation of the Fourth Amendment and 42 U.S.C. § 1983. Plaintiffs allege that, in addition to physical injuries, they suffered emotional damages as a result of the officers' allegedly unlawful conduct.

**<u>DISCUSSION</u>**

### III. <u>Standard for a Motion In Limine</u>

The purpose of a motion <u>in limine</u> is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. <u>See</u> <u>Luce v. United States</u>, 469 U.S. 38, 40 n.2 (1984); <u>Palmieri v. Defaria</u>, 88 F.3d 136, 141 (2d Cir. 1996); <u>Nat'l. Union Fire Ins. Co. v. L.E. Myers Co. Group</u>, 937 F. Supp. 276, 283 (S.D.N.Y. 1996). Evidence should be excluded on a motion <u>in limine</u> only when the evidence is clearly inadmissible on all potential grounds. <u>See also</u> <u>Baxter Diagnostics, Inc. v. Novatek Med., Inc.</u>, No. 94-CIV-5520 (AJP), 1998 U.S. Dist. LEXIS 15093, at *11 (S.D.N.Y. Sept. 25, 1998). Indeed, courts considering a motion <u>in limine</u> may reserve judgment until trial, so that the motion is placed in the appropriate factual context. <u>See</u> <u>Nat'l. Union Fire Ins. Co.</u>, 937 F. Supp. at 287. Further, the court's ruling regarding a motion <u>in limine</u> is "subject to change when the case unfolds, particularly if the actual testimony differs from what was [expected]." <u>Luce</u>, 469 U.S. at 41.

### IV. <u>Admissibility of Evidence Pursuant to the Federal Rules of Evidence</u>

The Federal Rules of Evidence govern the admissibility of evidence at trial. Rule 402 requires that evidence be relevant to be admissible. Fed. R. Evid. 402. Relevant

6

evidence is defined as evidence "having any tendency to make the
existence of any fact that is of consequence to the
determination of the action more probable or less probable than
it would be without the evidence." Fed. R. Evid. 401.
Therefore, the court's determination of what constitutes
"relevant evidence" is guided by the nature of the claims and
defenses in the cause of action. In an excessive force claim in
violation of the Fourth Amendment, "the question is whether the
officers' actions are 'objectively reasonable' in light of the
facts and circumstances confronting them, without regard to
their underlying intent or motivation." Bryant v. City of N.Y.,
404 F.3d 128, 136 (2d Cir. 2005). Therefore, relevant evidence
in the present case bears on whether the officers' conduct was
objectively reasonable. An analysis of reasonableness under the
Fourth Amendment "requires careful attention to the facts and
circumstances of each particular case, including the severity of
the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he
is actively resisting arrest or attempting to evade arrest by
flight." Graham v. Connor, 490 U.S. 386, 396 (1989) (citing
Tennessee v.Garner, 471 U.S. 1, 8-9 (1985)).

        In addition to the relevancy of the evidence that the
parties seek to exclude in their motions, several Rules of
Evidence bear on the court's determination of admissibility.

Each of the Rules relevant to the pending motions, discussed below, are subject to the prejudice-probative balancing analysis provided in Fed. R. Evid. 403. Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Fed. R. Evid. 403. The district court has broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. Fiacco v. City of Rensselaer, 783 F.2d 319, 327-28 (2d Cir. 1986). "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] . . . that it will divert the jury from the facts which should control their verdict.'" Bensen v. American Ultramar, Ltd., No. 92-CIV-4420 (KMW)(NRB), 1996 U.S. Dist. LEXIS 10647, at *19 (S.D.N.Y. July 26, 1996) (quoting United States v. Krulewitch, 145 F.2d 76, 80 (2d Cir. 1944)). The court applies the foregoing analysis to the parties' pending motions.

### A. Admissibility of Sean Stephen's November 2003 Conviction Pursuant to Rules 402, 403 and 609(a)(1)

Plaintiffs seek to preclude evidence of Sean Stephen's conviction for criminal possession of a controlled substance in the third degree arising from the July 2002 incident. Plaintiffs argue that this evidence is irrelevant and its

prejudicial effect outweighs its probative value.  Defendants

argue that the evidence is relevant and probative, and,

alternatively, that the evidence is admissible for impeachment

purposes pursuant to Fed. R. Evid. 609(a)(1).

The court finds that Sean Stephen's conviction

following his arrest is irrelevant to whether the officers'

actions were objectively reasonable before and during the course

of the incident at issue.  "If probable cause to arrest is

present, the actual guilt or innocence of the arrestee is

irrelevant to the amount of force that may be used."  Kopf v.

Skyrm, 993 F.2d 374, 379 (4th Cir. 1993).  The parties do not

dispute that there was probable cause to arrest Sean Stephen.

The offense for which Sean Stephen was subsequently convicted,

however, does not provide insight into whether he posed a threat

to the safety of the defendants or attempted to evade arrest,

and, thus, whether the defendants' use of force was reasonable.

Additionally, the court finds that the probative value

of the conviction for impeachment purposes is outweighed by its

prejudicial effect pursuant to Fed. R. Evid. 609(a)(1).  Rule

609(a)(1) allows, for impeachment purposes, the admission of

prior criminal convictions punishable by a term of imprisonment

in excess of one year.  In balancing the probative value against

prejudicial effect under this rule, courts examine the following

factors: (1) the impeachment value of the prior crime, (2) the

remoteness of the prior conviction, (3) the similarity between
the past crime and the conduct at issue, and (4) the importance
of the credibility of the witness.  Daniels v. Loizzo, 986
F. Supp. 245, 250 (S.D.N.Y. 1997) (citing Weinstein's Federal
Evidence § 609.04[2][a], at 609-20 (1987); U.S. v. Hayes, 553
F.2d 820, 828 (2d Cir. 1977)).  Paramount among the factors to
consider in the balancing analysis is whether the crime, by its
nature, is probative of the lack of veracity.  U.S. v. Ortiz,
553 F.2d 782, 784 (2d Cir. 1988)).

        Applying the first factor, the court finds that the
impeachment value of the crime of possession of a controlled
substance is low.  See, e.g., Hayes, 553 F.2d at 828 (stating
that possession of narcotics ranks low on a scale of probative
value for truthfulness); Haynes v. Kanaitis, No. 3:99-CIV-2551
(CFD), 2004 U.S. Dist. LEXIS 5527, at *9 (D. Conn.
March 3, 2004) (evidence of the prior narcotics possession
conviction inadmissible because its "probative value as to
credibility is not significant as it involves only possession of
narcotics"); see also, U.S. v. Estrada, 430 F.3d 606, 617 (2d
Cir. 2005) (recognizing that Rule 609(a)(1) crimes bear on the
issue of credibility to varying degrees).

        The second factor, the remoteness of the crime, is
measured from the date of trial.  Accord, Daniels, 986 F. Supp.
at 250 (citing United States v. Palumbo, 401 F.2d 270 (2d Cir.

1968)).  Here, the conviction is approximately five and a half years from the date that trial is scheduled.  At least one court in this Circuit held that a conviction that was five years old did not diminish the impeachment value of a highly probative conviction.  Brundidge v. City of Buffalo, 79 F. Supp. 2d 219, 226 (W.D.N.Y. 1999); see also, Williams v. McCarthy, No. 05-CIV-10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *4 (S.D.N.Y. October 25, 2007) (convictions were approximately two years old and held admissible); Jones v. City of New York, No. 98-CIV-6493 (LBS), 2002 U.S. Dist. LEXIS 2052, at *8 (S.D.N.Y. February 11, 2002) (that a conviction was nine years old weighed against admissibility).  Similarly, the court finds that the remoteness factor neither diminishes nor adds to the already low probative value of Sean Stephen's conviction.

The third criterion, similarity of the crimes, deals with the similarity of the charged crimes, or the incident at issue in the pending case, to the conviction.  The less similar the pending case to the prior conviction, the less prejudicial its admission is.  See Hayes, 553 F.2d at 828 (affirming the admission of a conviction that was "substantially different" from the instant case); Daniels, 986 F. Supp. at 250 (the plaintiff's conviction bore "no resemblance to the excessive force" and therefore "weigh[ed] in favor of introducing the [conviction]").  In this case, the conviction cannot be

11

considered as "substantially different" or bearing "no resemblance" to the incident at issue in the instant case because it arises out of the same events giving rise to the plaintiffs' claims. Therefore, the potential for prejudice is high. As the plaintiffs point out, the jury could interpret the defendants' actions to be justified or validated based on Sean Stephen's subsequent conviction.

Finally, the fourth criterion, the importance of the credibility of the witness, weighs in favor of admitting the conviction for impeachment purposes pursuant to Rule 609 because Sean Stephen is a plaintiff in the action and his credibility will be paramount at trial. In light of the balance of the other three factors, however, the court finds that the importance of Sean Stephen's credibility does not tip the balance in favor of admission, unless Sean Stephen testifies at trial that he was never convicted of any offense as a result of the July 2002 incident. The plaintiffs' motion to exclude Sean Stephen's November 2003 conviction is granted, unless Sean Stephen testifies as stated, in which case the defendants may cross-examine him regarding his conviction for criminal possession of a controlled substance in the third degree.

**B. Admissibility of Narcotics and Related Paraphernalia
Recovered from the Search on July 10, 2002**

Plaintiffs seek to preclude evidence of the specific
facts regarding the narcotics and drug paraphernalia recovered
from the search of Apartment 2L, 1316 Sterling Place, Brooklyn,
New York, on July 10, 2002, contending that it is irrelevant and
prejudicial.[1]  In opposition, defendants argue that "the fact
that 25 ounces of cocaine/crack was recovered is an important
fact the jury should know" because "the jurors could speculate
that the drugs recovered was [sic] marijuana, a drug with
significantly less societal impact than a drug like cocaine or
crack cocaine."  (Def. Opp'n. at 14.)  Further, defendants argue
that the jury "should be made aware that this intrusion into the
plaintiffs' home was done for the benefit of the community at
large since these drugs inevitably would have made their way on
the streets."  (Id.)  Defendants additionally argue that facts
of the exact type and quantity of the drugs recovered are
"necessary to establish the officers' frame of mind before they
entered the apartment."

The court respectfully disagrees with defendants'
arguments and finds that the type and quantity of the drugs
discovered as a result of the search is irrelevant to

---

[1]      The court notes that "Plaintiffs have offered to stipulate
that a quantity of narcotics sufficient to support a finding of
intent to distribute was recovered from the apartment."  (Pls.
Reply 2/20/09 at 10 n. 8.)

establishing the reasonableness of the officers' conduct in effecting Sean Stephen's arrest. Although the search warrant may have provided the police with knowledge regarding, and authority to search for, a particular type of narcotic, the type and quantity of the drugs recovered by the officers were not known by the officers at the time they entered the apartment. Therefore, the exact type and quantity of the drugs discovered after the plaintiffs were secured are irrelevant and inadmissible pursuant to Fed. R. Evid. 402 for the purpose of determining whether the officers' use of force was reasonable. Furthermore, the fact that the drugs were ultimately recovered does not bear on whether "the officers had a valid basis for wishing to secure the premises as quickly as possible," as defendants contend. (Def. Opp'n. at 15.) As plaintiffs point out, the search was pursuant to a warrant for drugs and weapons and the admissibility of the warrant, in its unredacted form, is not contested.

Furthermore, it appears that the defendants' other proffered basis regarding the relevance of the type and quantity of the drugs is, by their own admission, to inflame and prejudice the jury by casting plaintiffs in a negative light. (Def. Opp'n. at 14 stating, "The jury should be made aware that this intrusion into the plaintiffs' home was done for the benefit of the community at large since these drugs inevitably

would have made their way on to the streets.")  Clearly, this is in direct contravention to Rule 403 of the Federal Rules of Evidence.  Consequently, the court grants the plaintiffs' motion to exclude evidence of the type of and quantity of narcotics and drug paraphernalia recovered from the search of Apartment 2L, 1316 Sterling Place, Brooklyn, New York, on July 10, 2002, absent any testimony that no such items were recovered.

### C. Admissibility of Prior Arrests of and Unproven Charges Against Plaintiff Sean Stephen Pursuant to Federal Rules of Evidence 402, 403, 404(b), 608 and 609

As a result of the July 10, 2002 incident, in addition to his conviction for criminal possession of a controlled substance in the third degree, Sean Stephen was charged with criminal possession of a controlled substance in the first and seventh degrees, criminally using drug paraphernalia in the second degree (together, "drug charges"), endangering the welfare of a child, and resisting arrest (together with the drug charges, "unproven charges").  The unproven charges were subsequently dropped.  Additionally, Sean Stephen testified at his deposition that he had been arrested on approximately four other occasions, two of which involved domestic disputes, one of which involved his participation in a protest during the 1980s, and the last of which involved "snatching a chain or something" as a teenager (together, "prior arrests").  (Pls. Mot. Ex. 1.)

Plaintiffs argue that these prior arrests and unproven charges are inadmissible because they are irreparably prejudicial against the plaintiffs and have no bearing on credibility. Plaintiffs argue that this evidence should be excluded pursuant to Rules 402, 403, 404(b), 608, and 609 of the Federal Rules of Evidence.

Defendants have not addressed the admissibility of Sean Stephen's unproven charge of endangering the welfare of a child and the prior arrests regarding the domestic disputes, participation in a protest and chain snatching. Thus, the court deems unopposed the plaintiffs' motion to preclude evidence of the prior arrests and the unproven charge of endangering the welfare of a child. In any event, the prior arrests and the unproven charge of endangering the welfare of a child are irrelevant because they have no bearing on whether the officers used excessive force on the date in question and, consequently, they are inadmissible.

With the respect to the unproven resisting arrest charge arising from the July 2002 incident, the parties frame their arguments in the context of "other acts" evidence pursuant to Rule 404(b). Defendants argue that Sean Stephen's resisting arrest charge is relevant to the reasonableness of the defendants' conduct, and the fact that Sean Stephen was so charged by the arresting officers indicates the officers' state

of mind.  Evidence of the resisting arrest charge is unproven

misconduct that is "inextricably intertwined" with the incident

giving rise to this lawsuit and is not "other acts" evidence

under Fed. R. Evid. 404(b).  Accordingly, the court considers

the resisting arrest charge under Fed. R. Evid. 403.  See United

States v. Fama, 38 Fed. App'x 70, 73 (2d Cir. 2002) (citing

United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000))

(evidence of "uncharged misconduct" that is "inextricably

intertwined with the evidence regarding the charged offense" is

not, in fact, 404(b) other acts evidence, and, therefore, not

reviewed under 404(b), but rather pursuant to Rule 403).

        Whether plaintiff was resisting arrest is a factor

that the jury can consider when assessing whether an officer's

use of force was objectively reasonable.  Hernandez v. City of

Albuquerque, No. 02-CIV-0333 (JB) (RHS), 2004 U.S. Dist. LEXIS

30822 at *12 (D.N.M. Jan. 16, 2004) (citing Graham, 490 U.S. at

396 ("[P]roper application [of the Fourth Amendment's

reasonableness standard] requires careful attention to the facts

and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect poses an

immediate threat to the safety of the officers or others, and

whether he is actively resisting arrest or attempting to evade

arrest by flight.")).[2] Plaintiff's charge of resisting arrest,
however, is unproven, carries little probative value, and has
the potential to prejudice the jury's perception of the facts at
issue. The jury could conclude that if the plaintiff was
charged with resisting arrest, he did, in fact do so, and there
is the danger that the jury will attach the same weight to the
charge as they would a conviction. Additionally, the defendants
will have the opportunity to question Sean Stephen about his
conduct during the incident in question, including conduct
constituting resisting arrest. Therefore, at best, evidence of
the resisting arrest charge would be cumulative. As a result,
the resisting arrest charge is inadmissible.

        Defendants argue that Sean Stephen's drug charges
arising from the July 2002 incident that did not result in a
conviction are admissible because the "resisting arrest charge
is much less significant when compared to the drug

_____

[2]        Defendants also proffer the resisting arrest charge for
the purpose of demonstrating the officers' state of mind at the
time of the incident. However, the test for determining the
"reasonableness" of an officers' use of force is whether the
"'officers' actions are 'objectively reasonable' in light of the
facts and circumstances confronting them, without regard to
their underlying intent or motivation.'" Rickets v. City of
Hartford, 74 F.3d 1397, 1411 (2d Cir. 1996) (quoting Graham, 490
U.S. 386) (emphasis in original). Therefore, to the extent that
the subsequent resisting arrest charge is evidence of motivation
for the officers' conduct, i.e., that they subjectively believed
that Sean Stephen was resisting arrest, it is irrelevant to
determining whether the officers' use of force was objectively
reasonable.

charges. . . . [because they] amounted to Class A and B felonies with significant jail time, while the resisting arrest charge amounted to a misdemeanor." (Def. Opp'n. at 16-17.) As with the drug conviction, the court finds that the drug charges are inadmissible pursuant to Rule 402 because they are irrelevant. Defendants apparently proffer these charges solely to demonstrate Sean Stephen's bad character; however, his character is not at issue in this case. Given the prejudicial nature of the drug charges, they are also inadmissible under Rule 403.

The court finds that these unproven charges and prior arrests are inadmissible for impeachment purposes. Rule 609 – which allows the admission of convictions, as discussed in Part IV.A. <u>supra</u> – is inapplicable because, none of the unproven charges resulted in convictions. See <u>Williams</u>, 2007 U.S. Dist. LEXIS 79151, at *5 (evidence of an arrest that did not lead to a conviction was inadmissible). Similarly, defendants' reliance on Rule 608, which allows the admission of "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness," is unavailing. None of the unproven charges or prior arrests bear on Sean Stephen's character for truthfulness and, thus, are also inadmissible pursuant to Rule 608. See <u>Daniels</u>, 986 F. Supp. at 252 (holding that plaintiff's arrests that did not result in convictions were inadmissible under Fed. R. Evid. 608(b))

(citing <u>Michelson v. United States</u>, 335 U.S. 469, 482 (1948)

("Arrest without more does not . . . impeach the integrity or

impair the credibility of a witness. It happens to the innocent

as well as the guilty. Only a conviction, therefore, may be

inquired about to undermine the trustworthiness of a

witness.")).  Accordingly, all of the unproven charges and prior

arrests involving Sean Stephen are inadmissible for impeachment

purposes as well.

### D. Admissibility of Daryl Stephen's Youthful Offender Adjudication

In his Answer to Defendants' First Set of

Interrogatories, Daryl Stephen stated that he had been arrested

and charged with hindering prosecution in 2005.  Plaintiffs

argue that evidence of Daryl Stephen's 2005 juvenile

adjudication and its underlying facts are inadmissible for use

in defendants' case-in-chief and, pursuant to Rule 609(d), for

impeachment purposes.[3]  Defendants argue that unspecified facts

regarding Daryl Stephen's youthful adjudication are admissible

as relevant to causation and damages regarding his alleged

emotional injuries and for impeachment purposes.

---

[3]     The court notes that exhibits relating to this incident are
limited to Daryl Stephen's Answer to Defendants' Interrogatories
because Daryl Stephen was a minor at the time of the
adjudication and records regarding the incident are sealed
pursuant to New York law.  Because the records are sealed, the
underlying facts regarding the youthful adjudication, aside from
that it was for hindering prosecution, are unknown.

In the parties' Amended Joint Pre-trial Order, filed on April 7, 2009, defendants include Plaintiffs' Answer to the Defendants' First Set of Interrogatories in their list of impeachment exhibits, but not in their case-in-chief. The court assumes that the parties' Amended Joint Pre-trial Order reflects the defendants' current position regarding their intended use of Daryl Stephen's youthful adjudication. To the extent that defendants still intend to elicit the underlying facts of Daryl Stephen's youthful adjudication, the court addresses the use of this evidence for the defendants' case-in-chief as well as for impeachment.

Pursuant to Fed. R. Evid. 609(a), in limited circumstances, evidence of conviction of a crime is admissible for impeachment purposes. Rule 609(b) excludes evidence of juvenile adjudications from the scope of Rule 609, stating, "Evidence of juvenile adjudications is generally not admissible under this rule." (Emphasis added.) By its terms, Rule 609 does not bar, or govern, the admission of evidence of a juvenile adjudication not introduced for impeachment and pursuant to another rule of evidence. Indeed, the Second Circuit has held that "Rule 609(d) applies only to the use of juvenile adjudications for impeachment purposes and does not prevent their use to prove an issue in contention." U.S. v. Burrell, 289 F.3d 220, 224 (2d Cir. 2002). The court declines to read

the policies of Rule 609(d) into the language of Rule 404(b), as proposed by plaintiff, and finds that evidence of Daryl Stephen's youthful adjudication, limited to the fact of the adjudication, its date, and the amount of time Daryl Stephen spent in custody related to the adjudication, but excluding its underlying facts, is admissible pursuant to Rule 404(b) on the contested issues of causation and damages.

Rule 404(b) states, in relevant part, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes." When analyzing the admissibility of evidence pursuant to Rule 404(b), the Second Circuit follows an inclusionary approach in which 404(b) evidence is admitted unless it is introduced for the sole purpose of showing the witness's bad character, is overly prejudicial, or irrelevant. United States v. Pascarella, 84 F.3d 61, 69 (2d Cir. 1996). Under Rule 404(b), the court must first determine whether the evidence is offered for a proper purpose. Second, the court must determine if the evidence is relevant. Third, the court must balance the probative value of the evidence against the potential for unfair prejudice. Fourth, upon request, the court must instruct the jury that prior acts evidence only be considered for the proper purpose for which it was admitted. Huddleston v. United States,

485 U.S. 681, 691-692 (1988); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989).

Defendants offer the youthful adjudication evidence to dispute causation and damages. The court finds that this is a proper purpose, unrelated to Daryl Stephen's character. See, e.g, Karnes v. Strutski, 62 F.3d 485, 500 (3d Cir. 1995) (holding that the district court properly admitted evidence of plaintiff's prior arrest pursuant to Rule 404(b) to determine damages); Lewis v. District of Columbia, 793 F.2d 361, 363 (D.C. Cir. 1986); Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 380 (S.D.N.Y. 2005). The youthful adjudication evidence, limited to the fact of the adjudication and its date, and the amount of time Daryl Stephen spent in custody related to the adjudication, is relevant to causation and damages.

The court further finds that the probative value of the evidence is not outweighed by the potential for prejudice. The court is mindful that these records are sealed, and to permit unconstrained examination of Daryl Stephen's youthful adjudication would potentially undermine the state's policies behind sealing the records. By limiting the youthful adjudication evidence, the court avoids the "fishing expedition" feared by plaintiffs, and strikes the proper balance between the interests at stake.

The fact and date of Daryl Stephen's youthful adjudication and the amount of time he spent in custody related to the adjudication are admissible pursuant to 404(b) for purposes of proving or disproving causation and damages, but not for purposes of impeachment pursuant to Rule 609. See United States v. Rogers, 918 F.2d 207, 210-11 (D.C. Cir. 1990); United States v. Peterson, 867 F.2d 1110, 1115 (8th Cir. 1989); U.S. v. Martino, 759 F.2d 998, 1004-1005 (2d Cir. 1985) (admitting youthful adjudication evidence pursuant to Rule 404(b) without addressing Rule 609); Blake v. City of New York, No. 05-CIV-6652(BSJ), 2007 U.S. Dist. LEXIS 95913 at *4-5 (S.D.N.Y. July 13, 2007) (permitting evidence of youthful adjudication). Upon request, the court will instruct the jury to consider this evidence only for the purpose for which it was offered.

### E. Admissibility of Daryl Stephen's Employment Records

Pursuant to the Joint Pre-trial Order submitted by the parties on April 7, 2009, defendants intend to introduce three employment records of Daryl Stephen in its case-in-chief for purposes of contesting his damages, and approximately sixty pages of Daryl Stephen's employment records for impeachment purposes.[4] The three employment records of Daryl Stephen that

---

[4] The court notes that in their papers submitted in support of and in opposition to the plaintiffs' motion to exclude the employment records, the parties dispute whether the defendants

defendants seek to admit in their case-in-chief are: 1) Daryl Stephen's Trainee Acknowledgement submitted to BJ's (Ex. O), 2) Daryl Stephen's Résumé submitted to BJ's (Ex. P), and 3) Daryl Stephen's Employment Application submitted to BJ's (Ex. Q). (Proposed JPTO at 17.)  Plaintiffs argue that all of the employment records are irrelevant as to damages, and, for purposes of impeachment, the sixty pages are inadmissible pursuant to the collateral impeachment rule.

    The three documents proffered for defendants' case-in-chief are relevant as defined by Fed. R. Evid. 401 and, therefore, are admissible pursuant to Fed. R. Evid. 402, subject to the probative-prejudice balancing analysis under Rule 403. The court finds that the probative value of these records outweighs their prejudicial effect.  As plaintiffs concede, Daryl Stephen's employment history has some probative value in relation to his damages claim.  Plaintiffs' concerns about jury confusion are premised on sixty pages of Daryl Stephen's employment records; however, the defendants only seek to admit three of his employment records in their case-in-chief.  The

intend to admit sixty-six pages of Daryl Stephen's employment records in their case-in-chief, or only three.  Because the Amended Joint Pre-trial Order, filed after the motions in limine, lists only three employment records that the defendants intend to use in their case-in-chief, and approximately sixty pages for impeachment purposes, the court's analysis proceeds on the assumption that the Amended Joint Pre-trial Order reflects the parties' current positions.  The defendants shall notify the court by May 22, 2009 if it is mistaken in this assumption.

admission of these three documents will not amount to a "trial

within a trial" as the plaintiffs argue. Rather, it is for the

jury to determine what weight to give these records in

evaluating Daryl Stephen's alleged damages. The court finds

these three employment records are admissible in defendants'

case-in-chief. Upon plaintiffs' renewal of their motion at

trial, the court reserves decision regarding the admissibility

of Daryl Stephen's employment records proffered by defendants

for impeachment purposes.

### F. Admissibility of Civilian Complaint Review Board Documents and Defendant Miller's Written Answers to Written Deposition Questions Pursuant to 403 and 404(b), and for Impeachment Purposes

Defendants seek to preclude the introduction of six

exhibits pertaining to Civilian Complaint Review Board ("CCRB")

investigations regarding incidents unrelated to the July 2002

incident ("CCRB documents"), and defendant Miller's Answers to

Deposition Questions and the Written Deposition Questions

regarding a firearm discharge incident in 1989 ("Miller written

deposition materials")[5] (together, "defendants' prior conduct

evidence"). (Defs. Mem. at 6-7.) The court summarizes the

---

[5] The Miller written deposition materials indicate that
defendant Miller was disciplined for the discharge of his weapon
in April of 1989 during an incident in which an individual came
towards him, his partner, and another police officer. (Decl.
Saleem Ex. C.)

contents of the individual CCRB documents as follows (<u>See</u> Pls.

Opp'n. Ex. 1):

      1) **Bates Nos. 1250-51** ("Iliadis Interview")
is a summary of an interview by the CCRB
with defendant Iliadis regarding the
execution of a search warrant on July 24,
2002 at 6:14 a.m. at an apartment.
Defendant Iliadis was the last officer to
enter the location; when he entered he
observed the victim in a hidden room and
told him to get on the floor.  The victim
did not comply.  Iliadis pushed the victim
to the ground and he was cuffed by another
officer.  Iliadis did not remember if the
victim resisted at this point and he could
not remember if he used his foot to keep the
victim on the ground.  Iliadis stated that
he did not use any obscene language.  The
victim sustained injuries to his eye and rib
area.  Iliadis stated that he used
reasonable and necessary force and was not
aware of the victim's injuries at the time.

      2) **Bates Nos. 2347-2348** ("Dunston
Memorandum") is a CCRB Memorandum dated
5/21/98 regarding the execution of a search
warrant on October 11, 1996 in which the
victim alleges that defendant Dunston used
his foot to push the victim to the floor and
used "discourteous language" during the
execution of a search warrant while the
victim and her family were asleep in their
apartment.  The CCRB panel substantiated the
charges.

      3) **Bates Nos. 3121-3122** ("Hanley Report") is
a Substantiated Allegation CCRB Report dated
February 26, 2006 arising from an incident
on September 20, 1994 in which defendant
Hanley was observed in the hallway of an
apartment building punching victims and
using discourteous language (expletives)
while apprehending four individuals charged
with attempted robbery, assault on a police
officer, and disorderly conduct.  The CCRB
panel substantiated one charge of

discourtesy and five charges of unnecessary force by a complainant that defendant Hanley put his feet on a victim's neck, that Hanley hit another victim in the head with a radio, that Hanley kicked another victim in the stomach, and that Hanley elbowed and kneed another victim in the stomach. Two victims alleged that Hanley grabbed them and threw them into the side of the RMP. Complainants alleged that Hanely used expletives when speaking to them.

4) **Bates No. 1432** ("Thedison-Ballard Letter") is a 3/11/97 CCRB Letter to Ms. Thedison-Ballard informing complainant that her complaint against the NYPD was substantiated by the Board and outlining the subsequent procedures.

5) **Bates Nos. 1453-1454** ("Ballard Interview") is a CCRB Interview Report of an interview with Jack Ballard Jr. regarding an incident involving defendant Degan. According to Ballard, he and his wife got into a car accident on 12/27/95 between 9:30 and 9:45 p.m. when a truck backed into them and sped away. Ballard chased the truck on foot and smashed the truck's side window. Officers approached, commanded Ballard to "put his hands in the air and pointed a shot gun at him." Another officer forced Ballard's wife into a sitting position. A third officer shoved Ballard against a wall, handcuffed him, pushed him to the ground and pulled his jacket above his head. A fourth officer arrived and two officers began beating him. Ballard was driven to the precinct, and then taken to the hospital.

6) **Bates Nos. 1477-1478** ("Miller Interview") is a CCRB Interview Report dated 12/5/96 summarizing an interview with Officer Miller regarding defendant Miller's involvement in the Ballard incident (see Bates Nos. 1432, 1453-1454). Miller stated that Ballard held a woman by her neck with one hand and a steering lock club in the other and appeared to be arguing with the woman. Miller

> ordered Ballard to drop the weapon, but,
> although Ballard let go of the woman, he did
> not drop the club.  Another police officer
> attempted to remove the club from Ballard's
> hand.  The other police officer was
> overpowered and Miller grabbed Ballard's
> waist and Ballard kicked Miller in the head.
> Miller's face was cut, scraped, and
> bleeding, and he was cleaned up by an EMS
> technician. Miller denied using rude
> language or threats, hitting or punching
> Ballard, or seeing anyone punch Ballard.

Defendants argue that, even if admissible for a proper purpose pursuant to Rule 404(b), defendants' prior conduct evidence is irrelevant to an excessive force claim and the probative value is outweighed by its prejudicial effect.

Plaintiffs argue that the defendants' prior conduct evidence is admissible pursuant to Fed. R. Evid. 404(b) to establish a pattern of similar conduct.  Additionally, they argue that this evidence is admissible for impeachment purposes pursuant to Rule 607.  For the following reasons, the court finds that the defendants' prior conduct evidence is inadmissible pursuant to Rules 404(b) and 607, with the exception of the following three CCRB documents: 1) Iliadis Interview (Bates Nos. 1250-51), 2) Dunston Memorandum (Bates Nos. 2347-2348), and 3) Hanley Report (Bates Nos. 3121-3122).

As stated above, in Part IV.D, _supra_, to establish that evidence is admissible pursuant to Rule 404(b) of the Federal Rules of Evidence, the court must first determine if the

party seeking admission proffers the evidence for a "purpose other than to show the character of a person in order to prove that he acted in conformity therewith." Fed. R. Evid. 404(b); United States v. Benedetto, 571 F.2d 1246, 1248 (2d Cir. 1978). When, as here, the party proffers the evidence to demonstrate a pattern of relevant conduct, the evidence must "share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" Berkovich v. Hicks, 922 F.2d 1018, 1022 (2d Cir. 1990) (quoting Benedetto, 571 F. 2d at 1249); Ismail v. Cohen, 705 F. Supp. 243, 252-53 (S.D.N.Y 1989) (stating "specific acts of other misconduct may be introduced as extrinsic evidence under Rule 404(b) to prove . . . pattern of relevant conduct"), aff'd, 899 F.2d 183, 188-189 (2d Cir. 1990). The proffering party must show more than the "'mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.'" Wallace v. Hano, No. 90-CIV-2064 (WK), 1992 U.S. Dist. LEXIS 13388, at *19 (S.D.N.Y. 1992) (quoting Benedetto 571 F.2d at 1249).

        For example, in Wallace, a court in the Southern District of New York found that the proffered similar acts evidence did not meet the "signatory quality" required or "represent the type of *modus operandi* contemplated by *Rule 404(b).*" Id. at *20. Although the prior complaints had some

similar conduct as that charged, such as the defendant touching or grabbing the accused's arm and threatening the accused with arrest, the court found that these acts were not unusual, but "hardly an uncommon event for a law enforcement officer." Id.

By contrast, in Ismail, the court admitted the CCRB's, finding that the officer engaged in a pattern of "lashing out physically when he feels his authority is challenged by a citizen with whom he is dealing on the street." Ismail v. Cohen 706 F. Supp 243, 253 (S.D.N.Y. 1989), aff'd, 899 F.2d at 188. In Ismail, the defendant police officer, Cohen, struck plaintiff in the back of his head as plaintiff walked away from Cohen, handcuffed him and pressed his knee into plaintiff's back, and subsequently gave false testimony about the incident during trial. Ismail, 899 F.2d at 185. Plaintiff sought to introduce evidence, set forth in a complaint filed with the CCRB, that the defendant Cohen punched one Angel Castaldo in the jaw without provocation and hit him again while he was down, and then later falsely claimed that he was responding to an attack by Castaldo on his partner. Ismail, 899 F.2d at 188. As the Second Circuit later observed, the CCRB complaint in Ismail "arose under nearly identical circumstances to the incident for which the defendant was then on trial." Berkovich, 922 F.2d at 1023.

In light of this authority, after close examination, the court finds that the following CCRB documents are

inadmissible pursuant to Rule 404(b) because the purpose for
which it is proffered – pattern of similar conduct - is
inapplicable: 1) Thedison-Ballard Letter (Pls. Opp'n. Ex. 1,
Bates No. 1432), 2) Ballard Interview (Id. Bates Nos. 1453-
1454), and 3) Miller Interview (Id. Bates Nos. 1477-1478)
(together, "inadmissible CCRB documents").  The incidents
reflected in the inadmissible CCRB documents are not "so unusual
or distinctive" as to constitute a pattern of similar conduct
evidence, are dissimilar to the allegations in the instant
action, and do not identify with specificity the officer
involved in the acts described therein.  While portions of the
inadmissible CCRB documents indicate some police conduct that
shares general characteristics with the incident at bar, such as
allegations of officers using force to subdue civilians (Pls.
Opp'n. Ex. 1, Bates Nos. 1453-4), and using discourteous and
threatening language (Id., Bates Nos. 1453-4), and allegations
of officers punching or beating civilians (Id., Bates Nos. 1453-
1454), this prior conduct, although reprehensible, does not
represent a "unique scheme" or "signature."  The specific force
alleged in the inadmissible CCRB documents is different from the
specific force alleged in the present action.  For example, the
inadmissible CCRB documents reflect that the civilian was forced
into a sitting position (Id., Bates No. 1453).  Additionally,
the incidents described in the inadmissible CCRB documents vary

in circumstance, location, and time of day. (Id. Bates Nos. 1477-78, 1432, 1453-54 (incident took place on a highway at approximately 9:30 p.m.).) Pursuant to the authority cited above, the use of allegedly excessive force generally does not constitute pattern evidence under Rule 404(b).

Additionally, the court finds that Miller's written deposition materials do not "share unusual characteristics with the act charged." Berkovich, 922 F.2d at 1022 (quotations omitted). Rather, Miller's written deposition materials concern an unrelated incident involving the discharge of a firearm and there is no allegation that any defendant discharged a firearm during the July 2002 incident.

Furthermore, contrary to plaintiffs' assertions, the Miller written deposition materials and the following CCRB documents - 1) Thedison-Ballard Letter (Pls. Opp'n. Ex. 1, Bates No. 1432), 2) Ballard Interview (Id. Bates Nos. 1453-1454), and 3) Miller Interview (Id. Bates Nos. 1477-1478) - are inadmissible to impeach the officers' trial testimony pursuant to Rule 607. Plaintiffs proffered the use of this evidence pursuant to Rules 402, 403, and 607 "should Defendants claim that they have never been involved in the type of misconduct that Plaintiffs allege." (Pls. Opp'n. at 7.) However, as discussed above, this evidence does not reflect "the type of misconduct that Plaintiffs allege" and is therefore not

probative of defendants' character for truthfulness should they testify as plaintiffs anticipate.

The court now turns to the remaining CCRB documents. The court finds that the incidents reflected in CCRB documents, Iliadis Interview, Dunston Memorandum and Hanley Report, (respectively, Bates Nos. 1250-51, 2347-48, and 3121-3122) (together, "admissible CCRB documents"), fall within the purview of pattern evidence. Like the present case, the admissible CCRB documents reflect the execution of search warrants of apartments in the early morning hours (Id. Bates No. 1251 (6:15 a.m.)) or when the occupants were asleep (Id. Bates No. 2347) and include allegations of excessive force involving the officer's use of a foot to the back or neck to push the complainant to the floor (Id. Bates Nos. 1251, 2347, 3121), the use of "discourteous language" (Id. Bates No. 2347, 3121-3122), injuries sustained by victims (Id. Bates No. 1252), and lapses of memory by the police officers (Id. Bates No. 2151). The conduct of defendants Iliadis, Hanley, and Dunston reflected in the admissible CCRB documents constitutes evidence of a pattern of relevant conduct.

In finding that there is a "pattern of relevant conduct" under 404(b) to admit the admissible CCRB documents, the court must address whether their probative value is substantially outweighed by their prejudicial effect. The presence of the defendants at, and their particular roles in,

the July 2002 incident are at issue in the present action and
the pattern of relevant conduct evidence is probative of
indentifying the offending officers.  See Vilkhu v. City of New
York, No. 06-CIV-2095 (CPS)(JO), 2009 U.S. Dist. LEXIS 16616,
at*12 (E.D.N.Y. Mar. 3, 2009).  Two of the admissible CCRB
documents, involving Hanley and Dunston, are substantiated
reports, the other is an interview of defendant Iliadis,
enhancing their probative value.  See Berkovich, 922 F.2d at
1022 (stating that the probative value of the CCRB complaints
was lessened because defendant had been exonerated on all of the
charges except one).  The court notes that the Dunston
Memorandum and the Hanley Report date from 1998 and 1996, over a
decade ago, and the Iliadis Interview dates from 2002. Unlike
Fed. R. Evid. 609 governing impeachment evidence, however, Rule
404(b) does not provide a date upon which prior bad acts become
inadmissible.  Although the date of the incidents reflected in
the admissible CCRB documents diminishes the probative value of
the admissible CCRB documents, the dates also diminish the
documents' prejudicial effect.  Therefore, the court finds that
the dates of the incidents reflected in the CCRB documents do
not compel a conclusion that the probative value of the evidence
is outweighed by its prejudicial effect.  For the foregoing
reasons, the CCRB documents, Iliadis Interview, Dunston
Memorandum, and Hanley Report, (respectively, Bates Nos. 1250-

51, 2347-48 and 3121-3123), are admissible pursuant to Rule 404(b). Likewise, should the defendants Iliadis, Dunston, and Hanley deny being involved in conduct similar to that at issue in the pending lawsuit, the evidence is admissible for impeachment purposes pursuant to Rule 607.

## CONCLUSION

For the foregoing reasons the court denies in part and grants in part the parties' motions in limine as follows: 1) plaintiffs' motion to preclude evidence of Sean Stephen's November 20, 2003 conviction is granted; 2) plaintiffs' motion to preclude the type and quantity of the narcotics and related paraphernalia recovered during the July 2002 incident is granted; 3) plaintiffs' motion to preclude the prior arrests of and unproven charges against Sean Stephen is granted; 4) plaintiffs' motion to preclude evidence of the youthful adjudication of Daryl Stephen is granted with regard to its use for impeachment, but is otherwise denied as it is proffered to contest causation and damages; however, evidence of the youthful adjudication is limited to the fact of the adjudication, its date, and the amount of time Daryl Stephen spent in custody related to the adjudication; 5) plaintiffs' motion to preclude evidence of Daryl Stephen's employment records is denied with regard to the three exhibits for use in defendants' case-in-chief and the court reserves decision as to the admissibility of

the additional employment records for impeachment purposes; and 6) defendants' motion to preclude evidence of defendants' prior bad acts reflected in the CCRB documents and the Miller written deposition materials is granted, with the exception of the Iliadis Interview, the Dunston Memorandum, and the Hanley Report (respectively, Bates Nos. 1250-52, 2347-48 and 3121-3123).

The parties shall check-in with chambers and appear in-person for a final pretrial conference on May 22, 2009 at 10:00 a.m. in Courtroom 11D.  The parties are reminded to bring two courtesy copies of all pre-marked trial exhibits for the court.  By May 26, 2009, the parties shall submit, via ECF, supplemental jointly proposed jury instructions consistent with this Order and the court's Order of May 20, 2009.

Dated: May 21, 2009
       Brooklyn, New York


_____   /s/_____   _____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York